UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
UNITED STATES OF AMERICA            )
                                    )
    v.                              )    Criminal No. 09-0026 (PLF)
                                    )
RICO RODRIGUS WILLIAMS,             )
                                    )
        Defendant.                  )
                                    )
_____ )

MEMORANDUM OPINION AND ORDER

This case is before the Court on defendant Rico Rodrigus Williams' motion *in limine* to exclude from evidence the videotaped reenactment of the death of Sergeant Juwan Johnson produced for the History Channel's *Gangland* program. The Court heard oral argument on the motion on October 5, 2010. After carefully considering the parties' written submissions, the relevant case law, and the oral arguments presented by counsel, the Court will grant the defendant's motion to exclude.[1]

I. BACKGROUND

The defendant has been charged with one count of second degree murder and two counts of witness tampering. With respect to the murder count, it is alleged that, on July 3, 2005, the defendant and several other individuals struck and kicked Sergeant Juwan Johnson, and

---

[1] The papers before the Court in connection with this motion include: Defendant's Motion *in Limine* to Exclude Evidence ("Mot. to Exclude"); the government's Opposition to Defendant's Motion to Exclude ("Opp. to Mot."); and the Defendant's Reply to Motion *in Limine* to Exclude ("Reply"). The Court has also reviewed the transcript of the October 5, 2010 proceedings.

Sergeant Johnson died several hours later.  The government seeks to introduce a videotape produced for the History Channel show *Gangland* that intermingles photographs of Sergeant Johnson with footage of professional actors engaged in a purported reenactment of his death.  See Mot. to Exclude at 8.  The defendant objects to the introduction of this evidence, arguing that under Rule 403 of the Federal Rules of Evidence this videotaped reenactment is unfairly prejudicial and confusing.  Id.  The defendant further contends that the videotape consists of inadmissible hearsay offered to prove the truth of the matter asserted.  Id.  Finally, the defendant argues that admitting the videotape would deprive him of his rights under the Confrontation Clause because the actors in the videotape are in effect "witnesses" whom he will not be able to confront.  Id.

In response, the government argues that the videotape does not violate the Confrontation Clause and is not hearsay, and that it constitutes probative, admissible demonstrative evidence.  See Opp. at 16.  The government maintains that the videotape is relevant and probative because it will enable the jury to understand exactly how the alleged murder occurred, noting that if the videotape is not introduced, "the jury will be required to follow and recall a series of movements equal to that of a fast pace[d] game of Twister."  Id. at 18.  The government further argues that the videotape constitutes proper demonstrative evidence because the reenactment depicted is "substantially similar" to the actual events.  Id. at 19.  The Court agrees with the defendant that the potential prejudicial impact of the videotape greatly outweighs its probative value.

II.  DISCUSSION

Under Rule 403 of the Federal Rules of Evidence, the Court may exclude relevant evidence if the potential prejudicial impact of that evidence substantially outweighs its probative value or if the evidence is likely to confuse or mislead the jury.  FED. R. EVID. 403; see United States v. Fonesca, 435 F.3d 369, 375 (D.C. Cir. 2006).  Presumably, all evidence offered by the prosecution in a criminal case is intended to be prejudicial.  In applying Rule 403, therefore, the Court must first assess whether the prejudice is "unfair," that is, whether it has a tendency to "lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged."  Old Chief v. United States, 519 U.S. 172, 180 (1997).  Second, the Court must determine whether the danger of "unfair prejudice" *substantially* outweighs the probative value of the evidence.  See United States v. Orenuga, 430 F.3d 1158, 1165 (D.C. Cir. 2005).

In Orenuga, the district court admitted a videotape of a defendant discussing future bribes with his associate because, according to the court, the discussion demonstrated that the defendant knowingly and willingly participated in the bribery scheme.  United States v. Orenuga, 430 F.3d at 1165.  The court of appeals affirmed, finding that the fact that the defendant's incriminating statements also expressed racial, ethnic or religious bias did not unfairly prejudice the defendant because the comments were highly relevant to his participation in the scheme.  Id. at 1164-65.  Similarly, in United States v. Weisz, 718 F.2d 413, 431 (D.C. Cir. 1983), a videotape showing a Congressman accepting a bribe was probative and admissible because it provided "direct evidence" of the Congressman's relationship to the person who bribed him.  While the court of appeals acknowledged that the sight of a Congressman "stuffing $25,000 into his pockets" might offend the jury, it found that any prejudice created would not be

3

unfair because the tape "simply permitted the jury to see the commission of the very crime with which [the defendant was] charged," id. at 431-32, including the Congressman's demeanor as he accepted the money. Id. at 431. There, the probative value of the tape greatly outweighed any *unfair* prejudice. Id. at 431-32.

By contrast to both Orenuga and Weisz, the videotape in this case is not an actual depiction of the alleged crime but rather a re-creation of the events as they supposedly occurred. An unknown producer created the reenactment for a television audience and hired actors to play the roles of victim and assailants. As the defendant notes, "[t]he producer [of the videotape] would have had every incentive to make the 'reenactment' as dramatic and sensationalistic as possible" in order to appeal to the emotions of the television audience. Reply at 12. No one can know whether the producer did or did not act on that powerful incentive, or to what extent. Thus, the Court concludes that the prejudice to the defendant resulting from the admission of this videotape would be "unfair" because it would create a significant risk that the jury could find the defendant guilty based on the emotions stirred by the videotape, and not based on "proof specific to the offense charged." Old Chief v. United States, 519 U.S. at 180.

The government contends that the videotape has some probative value because it would enable the jury to visualize certain aspects of the alleged crime. For example, the videotape assertedly would show jurors the difference in height between the defendant and the victim. See Opp. at 20. There is no evidence, however, that the producers of the videotape used professional actors whose heights actually matched those of the defendant and victim; rather, the government states only that there is a "relative" match in heights. Id. Such uncertainty limits the probative value the videotape might have. The same is true with respect to the government's

4

suggestion that the videotape will enable jurors to understand the exact movements of each of the alleged attackers.  The government presents no evidence that the producers who re-created the videotape had actual knowledge of these movements, or that they accurately reproduced the movements.  When a party generates demonstrative evidence based on conditions that may be dissimilar to the actual conditions, the dissimilarities create uncertainty that undermines the probative value of the evidence.  United States v. Baldwin, 418 F.3d 575, 579-80 (6th Cir. 2005) (affirming trial court's refusal to admit a defendant's videotaped reenactment of his alleged kidnapping when the car used in the demonstration was not identical to that present during the alleged kidnapping, the defendant was in a different position during the demonstration than during the alleged kidnapping, and the rope used in the demonstration was knotted less than the one with which the defendant was supposedly bound).  In this case, even if the videotape might inform jurors, the risk of inaccuracy both limits the videotape's probative value and increases the possibility of unfair prejudice.

    The Court is also unpersuaded that the videotape would help the jury to understand how the alleged events occurred.  Opp. at 16-18.  In the cases cited by the government, the triers of fact benefited from videotaped reenactments because the facts were unusually complex and the reenactments addressed complicated scientific principles.  In United States v. Pena-Fernandez, No. 90-10199, 933 F.2d 1017, 1991 WL 90164, at *1 (9th Cir. May 28, 1991), for example, a videotaped reenactment disproved a defendant's claim that a slope in the terrain made him appear to be running away from, rather than toward, a border patrol agent.  That reenactment, which the prosecution prepared in anticipation of trial, demonstrated that running on such terrain did not create such an effect.  Id.  Similarly, in United States v.

5

Wanoskia, 800 F.2d 235, 238 (10th Cir. 1986), the prosecution relied on an in-court demonstration to show that it would have been impossible for a murder victim to have committed suicide in the manner described by the defendant. That demonstration used precise measurements of the victim's arm length and gunpowder residue patterns to show that the victim could not have held the gun away from herself at the distance the defendant indicated. Id. at 237-38.

This case does not present any such complicated scenario. Nor is there any evidence that the videotaped reenactment was prepared with the care and precision of the demonstrative evidence in Pena-Fernandez or Wanoskia. Here, the defendant and several other individuals allegedly struck and kicked Sergeant Johnson, and he died several hours later. The government has not provided any persuasive argument as to why the jurors would need a visual depiction of this event in order to understand how it occurred. Other participants and eyewitnesses "can just as easily describe the events that occurred in their own words." Reply at 12. Moreover, as noted, because there is no evidence that the videotape contains an accurate depiction of the events and because it was created by actors for a television audience, rather than for purposes of trial, any benefit that it might provide to the jury is greatly outweighed by its likely prejudicial impact.[2]

---

[2] Because the Court agrees with the defendant regarding the videotape's unfairly prejudicial impact, it need not address the questions of hearsay and the Confrontation Clause.

For the foregoing reasons, it is hereby

ORDERED that the defendant's motion to exclude the *Gangland* video reenactment [75] is GRANTED.[3]

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
DATE: October 18, 2010                            United States District Judge

---

[3] This Order does not decide the defendant's request, contained in the same motion, to exclude any testimony of Dr. Terril Tops bearing on Sergeant Johnson's autopsy, which will be resolved by a separate Memorandum Opinion and Order of this Court to be issued soon.