UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
UNITED STATES OF AMERICA            )
                                    )
         v.                         )    Criminal No. 09-0026 (PLF)
                                    )
RICO RODRIGUS WILLIAMS,             )
                                    )
         Defendant.                 )
_____)


MEMORANDUM OPINION AND ORDER

This matter is before the Court on defendant's motion to exclude "any testimony of Dr. Terril Tops bearing on" the autopsy of Sergeant Juwan Johnson, the alleged victim in this case. Defendant's Motion in Limine to Exclude Evidence ("Mot.") at 1. As explained below, the Court will grant the motion in part and deny it in part, prohibiting the government from introducing the autopsy report in evidence or asking Dr. Tops to summarize its contents, but permitting him to testify regarding any independent opinions he has formed based on the report and other evidence upon which he may reasonably rely.

I. DISCUSSION

The indictment in this case alleges that the defendant, Rico Williams, along with other individuals, committed murder by beating Sergeant Juwan Johnson to death on July 3, 2005. Indictment ¶ 5. On July 6, 2005, Dr. Kathleen M. Ingwersen, an Armed Forces Regional Medical Examiner, performed an autopsy on the body of Sgt. Johnson. See Government's Opposition to Defendant's Motions in Limine ("Opp."), Ex. A (Final Autopsy Report) ("Report")

at 2. Dr. Ingwersen prepared a written report in which she described the physical condition of Sgt. Johnson's body and internal organs, analyzed the appearance of slices of tissue viewed through a microscope, and relayed the results of toxicology and blood tests. See id. at 4-8. Her conclusions were summarized as follows:

> Based on these autopsy findings and the investigative and historical information available to me[,] the cause of death of this 25 year old male, Juwan Johnson, is multiple blunt force injuries reportedly sustained in a physical assault resulting in fatal injury to the heart and brain. Neuropathology findings show the brain injury to have occurred approximately 1-3 days [sic]. This is consistent with the reported assault 24 hours prior to death. The manner of death, in my opinion, is homicide.

Id. at 2. Dr. Ingwersen also signed Sgt. Johnson's death certificate. See Opp., Ex. B (Certificate of Death). In a section of the certificate entitled "Mode of Death," Dr. Ingwersen checked the box for "Homicide." See id.

Since performing the autopsy on Sgt. Johnson, Dr. Ingwersen has retired from the military and moved overseas. See Opp. at 2. As a result, she is not available to testify at trial. Id. at 3. Although Dr. Ingwersen will not testify, the government seeks to place the contents of her autopsy report and the death certificate into evidence by two means: (1) by "introduc[ing] the autopsy report, a diagram created during the autopsy process depicting hemorrhage, photographs taken during the autopsy procedure, photos of microscopic slides depicting hemorrhage and injury at the cellular level, and Sergeant Johnson's certificate of death into evidence"; and (2) by "introduc[ing] medical testimony from Dr. [Terril] Tops," a medical examiner who was not present at the autopsy of Sgt. Johnson's body but who, according to the government, can testify "regarding the types of injuries that Sergeant Johnson had all over his body, the placement of the

injuries, the possible causes of the injuries, the medical effects of the injuries, and his opinions regarding the cause and manner of Sergeant Johnson's death." Id. The defendant objects that the introduction of the autopsy report, the death certificate, and any testimony by Dr. Tops regarding the contents of those documents would violate his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution.

## II. DISCUSSION

The Sixth Amendment confers upon the defendant in a criminal prosecution "the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. "A witness's testimony against a defendant is thus inadmissible unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination." Melendez-Diaz v. Massachusetts, 129 S. Ct. 2527, 2531 (2009); see also Crawford v. Washington, 541 U.S. 36, 53-54 (2004). A declarant is a "witness" within the meaning of the Sixth Amendment if she "bear[s] testimony" against the defendant — that is, if she makes statements that are "testimonial." Crawford v. Washington, 541 U.S. at 51. As defined by the Supreme Court in Crawford, a "testimonial" statement is one that was "made under circumstances that would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Id. at 52. The Supreme Court has held that statements made by scientific analysts — as opposed to eyewitnesses, for example — receive no special treatment under the Confrontation Clause; if a statement by a lab technician or forensic analyst qualifies as testimonial, then it may be admitted against a criminal defendant only if the declarant

3

testifies at trial or is unavailable and has been cross-examined by the defendant's counsel in the past. See Melendez-Diaz v. Massachusetts, 129 S. Ct. at 2534-37.

The autopsy report and death certificate that the government seeks to introduce in evidence in this matter fit squarely within the definition of testimonial statements. While it may be the case, as the government argues, see Opp. at 10-11, that Dr. Ingwersen did not perform an autopsy on Sgt. Johnson's body *solely* to gather evidence for use in a future prosecution, there can be no doubt, based on the record before the Court, that she was aware that her report "would be available for use at a later trial." Crawford v. Washington, 541 U.S. at 52. As a military medical examiner, Dr. Ingwersen was empowered by statute to "conduct a forensic pathology investigation to determine the cause or manner of death" in certain cases in which "it appear[ed] that the decedent was killed or that, whatever the cause of the decedent's death, the cause was unnatural." 10 U.S.C. § 1471(b)(2)(A). When Dr. Ingwersen prepared her autopsy report, she was aware that Sgt. Johnson had been "found unresponsive in his barracks room" and that he had "reportedly" been the victim of "a physical assault." Report at 1-2. A simple visual inspection revealed that the body was covered in cuts and bruises. See id. at 6-7. The autopsy itself was attended by two special agents from the United States Army Criminal Investigation Command. Id. at 3. It could not have escaped Dr. Ingwersen's notice that her findings regarding the condition of the decedent's body and the cause of his death would likely be used in a criminal homicide investigation and at any resulting judicial proceeding.

Furthermore, the autopsy report and death certificate prepared by Dr. Ingwersen are marked by a formality characteristic of documents to be introduced in court. See Melendez-Diaz v. Massachusetts, 129 S. Ct. at 2543 (Thomas, J., concurring) (opining that "the

4

Confrontation Clause is implicated by extrajudicial statements only insofar as they are contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions" (citation and internal quotation marks omitted)). The autopsy report specifies the source of legal authority for Dr. Ingwersen's forensic examination, the "investigative agency" involved with the case, and the dates and locations relevant to Sgt. Johnson's death. See Report at 1. It is twice signed by Dr. Ingwersen, with her signature appearing above her title, Armed Forces Regional Medical Examiner. The death certificate is a standard form, its headings typed in both English and French, in which a pathologist may record a decedent's name, Social Security number, next of kin, and cause of death, among other details. It too is signed by Dr. Ingwersen, under a declaration stating, "I have viewed the remains of the deceased and death occurred at the time indicated and from the causes stated above." Opp., Ex. B. Both the report and the certificate thus bear the hallmarks of official documents, making "solemn declaration[s] or affirmation[s] . . . for the purpose of establishing or proving some fact." Melendez-Diaz v. Massachusetts, 129 S. Ct. at 2532. Thus, the report and death certificate contain testimonial statements that may not be admitted in evidence unless the defendant has the opportunity to cross-examine Dr. Ingwersen at trial, or has had that opportunity in the past.[1]

        The government attempts to avoid this conclusion by arguing that both documents are merely "records kept in the regular course of business." Opp. at 6. Such business records generally are exempt from the bar to admission of hearsay imposed by the Federal Rules of

---

[1] The government has not submitted as an exhibit for the Court's inspection the "diagram created during the autopsy process" that it also seeks to introduce in evidence. Opp. at 3. If that diagram was prepared by Dr. Ingwersen as part of the same process that yielded the autopsy report and death certificate, then it too will be excluded from evidence, for the same reasons that the report and certificate must be excluded.

Evidence. See Fed. R. Evid. 803(6). But even assuming that the autopsy report and death certificate qualify as business records within the meaning of the Federal Rules, the Supreme Court made clear in Melendez-Diaz that a document's status as a business record under the Federal Rules has little import for a Confrontation Clause analysis. "Business and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because — having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial — they are not testimonial." Melendez-Diaz v. Massachusetts, 129 S. Ct. at 2539-40. If a business record is testimonial, however — that is, if it has been prepared at least in part for "the purpose of establishing or proving some fact at trial" — then the record is not admissible unless the defendant has the opportunity to confront the declarant. Id. at 2540.

As the Court already has determined, the documents in question were in fact produced at least in part for possible use in a criminal prosecution or the military equivalent. Whether the documents also qualify as business records under the hearsay rules therefore is irrelevant. This is true notwithstanding the cases cited by the government — most or all decided before the release of the Supreme Court's decision in Melendez-Diaz — for the proposition that "'business records are expressly excluded from the reach of Crawford.'" Opp. at 7 (quoting United States v. De la Cruz, 514 F.3d 121, 133 (1st Cir. 2008)); see also Opp. at 7-8 ("'[A] statement properly admitted under Fed. R. Evid. 803(6) cannot be testimonial because a business record is fundamentally inconsistent with what the Supreme Court has suggested comprise the defining characteristics of testimonial evidence.'" (quoting United States v. Feliz, 467 F.3d 227,

6

233-34 (2d Cir. 2006)). The Supreme Court in Melendez-Diaz decisively rejected that argument, and the Court therefore can accord it no weight.[2]

Because the statements contained in the autopsy report and the death certificate are testimonial within the meaning of that term established by Crawford and Melendez-Diaz, neither document will be admitted in evidence unless Dr. Ingwersen testifies. Nor will the government be permitted to make "an end run around Crawford" and Melendez-Diaz by placing Dr. Tops on the stand to repeat or summarize statements made in either of those documents. United States v. Johnson, 587 F.3d 625, 635 (4th Cir. 2009) (warning that a witness may not be "used as little more than a conduit or transmitter for testimonial hearsay").

Having recognized those limits on the scope of Dr. Tops' testimony, the Court is also mindful that "while the Supreme Court in Crawford [and Melendez-Diaz] altered Confrontation Clause precedent, it said nothing about the Clause's relation to Federal Rule of Evidence 703." United States v. Henry, 472 F.3d 910, 914 (D.C. Cir. 2007); see also United States v. Law, 528 F.3d 888, 900 (D.C. Cir. 2008). That Rule provides:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, *the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted*. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting

---

[2] The Court is aware that the Supreme Court granted certiorari on September 28, 2010, in the case of Bullcoming v. New Mexico, No. 09-10876, to consider whether a defendant's Sixth Amendment right to confrontation is violated when the out-of-court statements of a nontestifying analyst are admitted through the testimony of a second analyst.

> the jury to evaluate the expert's opinion substantially outweighs
> their prejudicial effect.

Fed. R. Evid. 703 (emphasis added).

The government has represented that Dr. Tops will testify as an expert witness. See Opp. at 12. As such a witness, Dr. Tops may testify as to his own independent opinion concerning the cause or manner of Sgt. Johnson's death, even if that opinion is based in part on the inadmissible autopsy report. See Fed. R. Evid. 703 advisory committee's note (giving as an example of acceptable practice under Rule 703 a physician's reliance on the reports and opinions of other doctors in forming his own opinion for presentation at trial). So long as Dr. Tops does not disclose any of the testimonial hearsay underlying his opinion on direct examination and has a sound basis for his opinion and conclusions, his testimony would not offend the Confrontation Clause. See United States v. Turner, 591 F.3d 928, 934 (7th Cir. 2010) (Melendez-Diaz "does not control" case in which an individual "testified as an expert witness presenting his own conclusions" based on inadmissible lab reports prepared by another analyst); United States v. Winston, No. 07-14633, 2010 WL 1253809, at *19-*20 (11th Cir. Apr. 2, 2010) ("Although Melendez-Diaz discusses when a forensic opinion may be admitted into evidence, neither it nor any opinion of this Court addresses whether an expert witness's testimony that is based on a forensic opinion prepared by a non-testifying expert, in addition to other evidence, violates a defendant's right to confrontation. . . . [P]ursuant to Federal Rule of Evidence 703, an expert witness may base his testimony on inadmissible information so long as such information is 'regularly relied upon by experts in his field.'"); United States v. Johnson, 587 F.3d at 635 ("An expert witness's reliance on evidence that Crawford would bar if offered directly only becomes a

problem where the witness is used as little more than a conduit or transmitter for testimonial hearsay, rather than as a true expert whose considered opinion sheds light on some specialized factual situation."); United States v. Mirabal, No. CR 09-3207, 2010 WL 3834072, at *4 (D.N.M. Aug. 7, 2010) (concluding that an expert may testify as to an opinion reached in reliance on a document that itself is inadmissible under Melendez-Diaz).

The Court cautions the government, however, that Dr. Tops may testify only as to his "independent judgment," reached by application of "his training and experience to the sources before him" — not merely by adoption of Dr. Ingwersen's opinions. United States v. Johnson, 587 F.3d at 635. Dr. Tops would appear to have several pieces of evidence from which to draw his own conclusions regarding Sgt. Johnson's death. For example, Sgt. Johnson's autopsy yielded not only Dr. Ingwersen's report, but also a set of photographs of the decedent's body and microscopic slides of bodily tissue. See Report at 1, 7. Those items, in combination with Dr. Ingwersen's report and any other appropriate evidence, might well provide an adequate basis for the formation of an expert opinion. Furthermore, the photographs and/or slides, unlike the autopsy report, presumably would be admissible in evidence, assuming they can be authenticated as required by the Federal Rules. The government and Dr. Tops simply must take care to ensure that Dr. Tops is in no way reduced to "parrot[ing]" Dr. Ingwersen's findings. United States v. Johnson, 587 F.3d at 635. The Court certainly will be alert to such a risk.

III.  CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that [75] defendant's motion in limine to exclude testimony of Dr. Tops "bearing on" Sgt. Johnson's autopsy is GRANTED in part and DENIED in part;[3] and it is

FURTHER ORDERED that the autopsy report and death certificate are excluded from evidence.  Dr. Tops will be permitted to testify subject to the restrictions described in this Memorandum Opinion and Order.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  October 18, 2010

---

[3] This Order does not decide the defendant's request, contained in the same motion, to exclude the so-called "reenactment video," which was resolved by a separate Memorandum Opinion and Order (Docket No. 93) issued by the Court earlier today.