UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
UNITED STATES OF AMERICA,               )
                                        )
        v.                              )       Criminal No. 09-0026 (PLF)
                                        )
RICO RODRIGUS WILLIAMS,                 )
                                        )
        Defendant.                      )
_____ )


OPINION

        This matter is before the Court on the motion of defendant Rico Rodrigus

Williams for judgment of acquittal on Count Two of the Indictment or, in the alternative, for a

new trial on that count.  Upon consideration of the parties' papers, the relevant legal authorities,

and the entire record in this case, the Court will deny Mr. Williams' motion.[1]


I.  BACKGROUND

        On February 3, 2009, a grand jury returned an Indictment charging defendant Rico

Rodrigus Williams with one count of second degree murder, in violation of 18 U.S.C. § 1111(a),

and three counts of witness tampering, in violation of the Victim and Witness Protection Act,

18 U.S.C. § 1512(b)(3).  As alleged in the Indictment, on or about July 3, 2005, Mr. Williams

unlawfully killed Sergeant Juwan Johnson during a gang initiation by striking Sergeant Johnson

_____

        [1]     The papers reviewed in connection with the pending motion include: the re-typed
indictment ("Indictment") [Dkt. No. 128]; the jury verdict form ("Verdict Form") [Dkt. No. 137];
the defendant's motion for judgment of acquittal on Count Two or, in the alternative, for a new
trial ("Mot.") [Dkt. Nos. 152, 153]; the government's memorandum in opposition to the
defendant's motion for judgment of acquittal and motion for a new trial on Count Two ("Opp.")
[Dkt. No. 155]; and the defendant's reply to the government's opposition to his motion for
judgment of acquittal and new trial ("Reply") [Dkt. No. 159].

with his fists and kicking him with his feet.  See Indictment ¶ 5.  Mr. Williams then intimidated

and threatened, or attempted to intimidate and threaten, other members of his gang with the

intent to prevent them from communicating information about the events surrounding Sergeant

Johnson's death to United States law enforcement authorities.  See id. ¶ 7.  Before trial, the

government dismissed one of the witness tampering counts.

On October 25, 2010, trial began, and on November 9, 2010, the Court instructed

the jury.  In accordance with the parties' joint proposed instructions, the Court gave the following

instruction to the jury on the two remaining witness tampering counts:

> Counts Two and Three of the indictment charge Mr. Williams with
> tampering with a witness, which is a violation of federal law.  In
> order to find the defendant guilty of these charges, or of either of
> these charges — because again, you should consider Count Two
> and Count Three separately, but I'm instructing you at once
> because the same elements apply in each case — you have to apply
> the elements to the facts that you find.  In order to find the
> defendant guilty of these charges, you must find that the
> government proved each of the following four elements beyond a
> reasonable doubt:
>
> One, that the defendant knowingly used intimidation and threats, or
> attempted to do so, or caused another person to do so; second, that
> the defendant acted with the intent to hinder or delay or prevent the
> individuals named in the indictment from communicating to law
> enforcement authorities information relating to the commission or
> the possible commission of a crime; third, that the offense, the
> underlying offense that he hindered the communication with
> respect to, the underlying offense, was a federal offense.
>
> In other words, the second element is that he acted with the intent
> to hinder, delay, or prevent individuals from communicating with
> law enforcement authorities information relating to the commission
> or possible commission of an offense; the third element is that
> [the] particular offense must have been a federal offense.  But the

government does not have to prove that the defendant knew that the crime was a federal offense.

Fourth, that the defendant believed that these other persons might communicate with federal authorities regarding the alleged offense.

Now, when you read the indictment — and you'll have a copy of the indictment with you — this instruction may make more sense than in the abstract. But let me summarize briefly, just to remind you. What's alleged in Count Two is that on or about July 4th, 2005, the defendant knowingly committed the offense of tampering with a witness by using intimidation and threats, and attempting to do so toward the following individuals: Latisha Ellis, Nicholas Sims, Rodney Howell, and Terrance Norman. And the evidence you've got to look at is the evidence relating to that cookout or barbeque on July 4th.

Now, you the jury must be unanimous — that is, you must all agree — as to which of these individuals, if any, were the subject of such intimidation or threats. And I will remind you of that directive, and it will be reflected in the verdict form that I will be giving you.

Regarding Count Three of the indictment, it is alleged that in or about July 2005, the defendant knowingly committed the offense of tampering with a witness by causing Themitrios Saroglou to intimidate and threaten Nicholas Sims. So those are the two tampering charges.

Nov. 9, 2010 Trial Tr. at 41-43.[2]

On November 15, 2010, Mr. Williams was found guilty of Count One of the

Indictment, second degree murder, in violation of 18 U.S.C. § 1111(a); and Count Two, witness

---

[2]     The instructions given to the jury on the elements of witness tampering are substantively identical to the proposed instructions that the parties jointly filed with the Court on October 19, 2010. See Proposed Jury Instructions at 44, Oct. 19, 2010 [Dkt. No. 96]. The parties' proposed instructions were later revised slightly pursuant to the parties' requests and without any objection noted. See Order ¶ 4, November 8, 2010 [Dkt. No. 124] ("The Court will give the tampering instruction suggested by the government in a recent e-mail, and not objected to by the defense, as modified to include a unanimity instruction, as suggested by the defense.").

tampering, in violation of 18 U.S.C. § 1512(b)(3).  See Verdict Form at 1-2.  The jury found him

not guilty on Count Three, the second witness tampering charge.  Id. at 2.  As for Count Two, the

Indictment stated:

> On or about July 4, 2005, in the Federal Republic of Germany, the
> defendant, **RICO RODRIGUS WILLIAMS**, did knowingly
> intimidate, attempt to intimidate and threaten, persons known to
> the Grand Jury, and herein identified as Latisha Ellis, Nicholas
> Sims, Rodney Howell and Terrence Norman with the intent to
> hinder, delay and prevent the communication to a law enforcement
> officer of the United States of information relating to the
> commission or possible commission of a federal offense.

Indictment ¶ 7 (emphasis in original).

Six months after the jury rendered its verdict in this case, the Supreme Court

issued a decision in Fowler v. United States, 131 S. Ct. 2045 (2011).  As Mr. Williams describes

it, under Fowler "the instructions provided to the jury on the elements of 18 U.S.C. § 1512 were

clearly incorrect."  Mot. at 1.  Furthermore, Mr. Williams asserts that "appropriate jury

instructions under Fowler would have resulted in an acquittal on Count Two."  Id.  Consequently,

Mr. Williams requests that the Court vacate his conviction on Count Two or, in the alternative,

grant him a new trial on that count.  See id.  The government opposes the motion.

## II.  LEGAL STANDARD

Under Rule 29 of the Federal Rules of Criminal Procedure, the Court must enter

judgment of acquittal on any offense charged for which the evidence is insufficient to sustain a

conviction.  United States v. Safavian, 644 F. Supp. 2d 1, 7-8 (D.D.C. 2009).  In ruling on a

motion for judgment of acquittal, the Court must "'consider[] the evidence in the light most

favorable to the government and determin[e] whether, so read, it is sufficient to permit a rational

trier of fact to find all of the essential elements of the crime beyond a reasonable doubt.'" <u>United States v. Kayode</u>, 254 F.3d 204, 212-13 (D.C. Cir. 2001) (quoting <u>United States v. Harrington</u>, 108 F.3d 1460, 1464 (D.C. Cir. 1997)). The Court must "accord[] the government the benefit of all legitimate inferences," <u>United States v. Weisz</u>, 718 F.2d 413, 437 (D.C. Cir. 1983), and accept the jury's verdict of guilt if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>United States v. Arrington</u>, 309 F.3d 40, 48 (D.C. Cir. 2002) (emphasis in original) (quotations omitted). Put another way, the Court may grant a motion for judgment of acquittal only where "a reasonable juror *must necessarily* have had a reasonable doubt as to the defendant['s] guilt." <u>United States v. Weisz</u>, 718 F.2d at 437 (emphasis in original).

Rule 33(a) of the Federal Rules of Criminal Procedure provides that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "[A]ny error sufficient to require a reversal on appeal is an adequate ground for granting a new trial." 3 Charles Alan Wright & Sarah N. Welling, Federal Practice & Procedure § 589 (4th ed. 2011). A new trial should be granted only if the defendant has shown that "'the error was substantial, not harmless, and that the error 'affected the defendant's substantial rights.'''" <u>United States v. Safavian</u>, 644 F. Supp. 2d at 8 (quoting <u>United States v. Walker</u>, 899 F. Supp. 14, 15 (D.D.C. 1995) and <u>United States v. Johnson</u>, 769 F. Supp. 389, 395-96 (D.D.C. 1991)). Whether to grant a motion for a new trial is "a decision committed to the Court's sound discretion." <u>United States v. Neill</u>, 964 F. Supp. 438, 441 (D.D.C. 1997).

Mr. Williams challenges the Court's instructions to the jury on the elements of witness tampering. <u>See</u> <u>generally</u> Mot. But he did not object to those instructions at trial; to the

contrary, the instructions provided to the jury were substantively identical to those jointly proposed by Mr. Williams and the government. Thus, where, as here, a defendant fails to object to a jury instruction before the jury retires to deliberate, this Court's review is only for "plain error" in accordance with Rule 52(b) of the Federal Rules of Criminal Procedure. United States v. Marcus, 130 S. Ct. 2159, 2164 (2010); see United States v. Laureys, 653 F.3d 27, 32 (D.C. Cir. 2011) (citing United States v. Bryant, 523 F.3d 349, 353 (D.C. Cir. 2008)); United States v. Wilson, 605 F.3d 985, 1020 (D.C. Cir. 2010); United States v. Thompson, 279 F.3d 1043, 1049 (D.C. Cir. 2002); see also United States v. Brandao, 448 F. Supp. 2d 311, 318 (D. Mass. 2006) (applying "the plain error standard to an objection raised for the first time in a post-trial motion [before the trial court], because at that stage, the court 'performs something of an appellate role'") (quoting United States v. Washington, 263 F. Supp. 2d 413, 426 n.7 (D. Conn. 2003)); United States v. Clarke, 767 F. Supp. 2d 12, 24 (D.D.C. 2011).

Under the plain error standard, a defendant must establish "that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the [defendant's] substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." United States v. Marcus, 130 S. Ct. at 2164 (quotations omitted); see United States v. Laureys, 653 F.3d at 32; United States v. Rawlings, 522 F.3d 403, 407 (D.C. Cir. 2008). As for the third prong of that standard, the Supreme Court has stated that, "to meet this standard an error must be 'prejudicial,' which means that there must be a reasonable probability that the error affected the outcome of the trial."

United States v. Marcus, 130 S. Ct. at 2164.[3]  The burden is on the defendant to prove "each

element of the plain error standard."  United States v. Brown, 508 F.3d 1066, 1071 (D.C. Cir.

2007) (citing United States v. Olano, 507 U.S. 724, 734 (1993)); see United States v. Clarke,

767 F. Supp. 2d at 24; see also United States v. Johnson, 592 F.3d 164, 169 (D.C. Cir. 2010)

("If the defendant did not object [to an instructional error], it is the defendant's burden to show

not only that the error was obvious, but also that it prejudiced him.").


## III.  DISCUSSION

Mr. Williams was convicted of one count of witness tampering, in violation of

18 U.S.C. § 1512(b)(3).  That statute provides that

> [w]hoever knowingly uses intimidation, threatens, or corruptly
> persuades another person, or attempts to do so, or engages in
> misleading conduct toward another person, with intent to . . .
> hinder, delay, or prevent the communication to a law enforcement
> officer or judge of the United States of information relating to the
> commission or possible commission of a Federal offense . . . shall
> be fined under this title or imprisoned not more than 20 years, or
> both.

18 U.S.C. § 1512(b)(3).

---

[3]  The prejudice requirement of the plain error standard applies in the "ordinary case."  United States v. Marcus, 130 S. Ct. at 2164 (quotations omitted).  As the Supreme Court has noted, however, certain errors, referred to as "structural errors," are exceptions that do not necessarily require the defendant to show actual prejudice.  Id. (quotations omitted).  Such errors "might affect substantial rights regardless of their actual impact on [a defendant's] trial."  Id. (quotations omitted).  But such structural errors "are a very limited class of errors that affect the framework within which the trial proceeds."  Id. (quotations omitted).

Mr. Williams does not assert that the alleged instructional errors in this case fall within the structural error category.  Nor could he.  See United States v. Marcus, 130 S. Ct. at 2165 (noting types of instructional errors held to be non-structural, including "omitting mention of an element of an offense," and "erroneously instructing the jury on an element").

As discussed, Mr. Williams did not object to the jury instruction on witness tampering.  But he now raises the argument that under the Supreme Court's decision in Fowler v. United States, the instructions provided to the jury on the elements of the witness tampering statute were clearly incorrect, and that the proper jury instructions under Fowler would have resulted in an acquittal on Count Two.

According to Mr. Williams, the jury instructions violated Fowler on two grounds:

> First, the instruction did not require the jury to find that a relevant communication would have been made to a "federal law enforcement officer" as required by Fowler.  Simply referring to "law enforcement authorities" or "federal authorities" in general does not comport with the clear mandate of Fowler that the relevant communication must be made to a "federal law enforcement officer."
>
> Second, the jury was instructed it could find Mr. Williams guilty of witness tampering if a witness "might" have communicated with authorities.  That is a significantly lower bar than the "reasonable likelihood" standard mandated by Fowler.

Reply at 2.

Mr. Williams then contends that the evidence in this case "supports likely communications with only two kinds of law enforcement officers: (1) German authorities, and (2) Department of Criminal Investigative Services ('DCIS' or 'CID') special agents." Mot. at 6. Because, Mr. Williams says, neither of those law enforcement officers qualifies as federal law enforcement officers for purposes of 18 U.S.C. § 1512, no properly instructed and reasonable jury could have found beyond a reasonable doubt that there existed a reasonable likelihood that a witness would communicate with a federal law enforcement officer.  See Mot. at 6-7.

The government disagrees. As the government sees it, the Court's instructions were not erroneous, and even if they were, the evidence established at trial "is of such strength that the alleged error in the jury instructions does not rise to the level of plain error." Opp. at 13.

The Court proceeds first with a discussion of Fowler v. United States and then addresses the substance of Mr. Williams' two assignments of error.

## A. *Fowler v. United States*

In Fowler v. United States, the Supreme Court examined the elements of 18 U.S.C. § 1512(a)(1)(C), a subsection of the federal witness tampering statute. See Fowler v. United States, 131 S. Ct. at 2048.[4] That subsection, in relevant part, forbids the killing or attempted killing of another person with a certain "intent," that is, an intent to "prevent the communication by any person to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense[.]" 18 U.S.C. § 1512(a)(1)(C). A related subsection (also applicable to 18 U.S.C. § 1512(b)(3)) provides that

> no state of mind need be proved with respect to the circumstance . . . that the judge is a judge of the United States or that the law enforcement officer is an officer or employee of the Federal Government or a person authorized to act for or on behalf of the Federal Government or serving the Federal Government as an adviser or consultant.

18 U.S.C. § 1512(g)(2).

---

[4]    Fowler involved a different subsection of the federal witness tampering statute than the one at issue in this case, 18 U.S.C. § 1512(b)(3). But as courts repeatedly have acknowledged, "the elements of subsections (b)(3) and (a)(1)(C) are . . . sufficiently similar." United States v. Lopez, 372 F.3d 86, 90 n.2 (2d Cir. 2004); see also United States v. Harris, 498 F.3d 278, 284 n.4 (4th Cir. 2007), overruled on other grounds by Fowler v. United States, 131 S. Ct. at 2048. Consequently, the Supreme Court's reasoning and holding in Fowler regarding the elements of 18 U.S.C. § 1512(a)(1)(C) are equally applicable to 18 U.S.C. § 1512(b)(3).

As the Supreme Court stated, the language of 18 U.S.C. § 1512(a)(1)(C) makes clear that in a prosecution under this subsection, the government must prove "(1) a killing or attempted killing, (2) committed with a particular intent, namely, an intent (a) to 'prevent' a 'communication' (b) about 'the commission or possible commission of a Federal offense' (c) to a federal 'law enforcement officer or judge.'" Fowler v. United States, 131 S. Ct. at 2049. The Supreme Court described the question presented in Fowler as follows:

> We focus on instances where a defendant killed a person with an intent to prevent that person from communicating with law enforcement officers in general but where the defendant did not have federal law enforcement officers (or any specific individuals) particularly in mind. The question before us concerns what, if anything, the Government must show beyond this broad indefinite intent in order to show that the defendant more particularly intended to prevent communication with *federal* officers as well.

Id. at 2048 (emphasis in original).

The Court held "that, in such circumstances, the Government must show that there was a *reasonable likelihood* that a relevant communication would have been made to a federal officer." Fowler v. United States, 131 S. Ct. at 2048 (emphasis in original). In doing so, the Court expressly rejected the "reasonably possible" standard proposed by the government, concluding that where a federal crime is at issue, "communication with federal law enforcement officers is always a *possibility*," and that such a standard therefore would "weaken or eliminate the independent force of the separate statutory requirement that the defendant, in killing the victim, must intend to prevent communication with one who is 'a law enforcement officer or judge *of the United States*.'" Id. at 2051-52 (quoting 18 U.S.C. § 1512(a)(1)(C)) (emphasis in original). Instead, the Court accepted the defendant's proposed "reasonable likelihood" standard,

stating that such a standard "is consistent with the statute's language and objectives."  Id.

at 2052.  In concluding its opinion, the Supreme Court restated its holding:

> [I]n a case such as this one where the defendant does not have particular federal law enforcement officers in mind[,] the Government must show *a reasonable likelihood* that, had, *e.g.*, the victim communicated with law enforcement officers, at least one relevant communication would have been made to a federal law enforcement officer.  That is to say, where the defendant kills a person with an intent to prevent communication with law enforcement officers generally, that intent includes an intent to prevent communications with *federal* law enforcement officers only if it is reasonably likely under the circumstances that (in the absence of the killing) at least one of the relevant communications would have been made to a federal officer.

Id. at 2052 (emphasis in original).

Consequently, as this Court understands Fowler, to obtain a conviction under

18 U.S.C. § 1512(a)(1)(C), the government now must prove

(1) a killing or attempted killing,

(2) committed with a particular intent, namely, an intent

> (a) to "prevent" a "communication"

> (b) about "the commission or possible commission of a Federal offense"

> (c) [*that was reasonably likely to have been made to a person who was*] a federal "law enforcement officer or judge."

Fowler v. United States, 131 S. Ct. at 2049.

*B. Federal Law Enforcement Officer*

As discussed, Mr. Williams argues that the Court's jury instructions on witness tampering were incorrect for two reasons. As for the first reason, Mr. Williams contends that the instructions "did not require the jury to find that the relevant communication would have been made to a '*federal* law enforcement officer' as required by <u>Fowler</u>.'" Reply at 2 (emphasis added). Mr. Williams asserts that the instructions simply referred to "law enforcement authorities" or "federal authorities" in general, which "does not comport with the clear mandate of <u>Fowler</u> that the relevant communication must be made to a 'federal law enforcement officer.'" <u>Id</u>.

The Court concludes that this argument fails the first prong of the plain error test because there was no error in the jury instructions on this point. In reviewing jury instructions for error, the Court examines the instructions "'as a whole.'" <u>United States v. Jefferson</u>, No. 03-3062, 2004 WL 1124941, at *1 (D.C. Cir. May 19, 2004) (quoting <u>United States v. Washington</u>, 106 F.3d 983, 1002 (D.C. Cir. 1997)); <u>see</u> <u>United States v. Braxtonbrown-Smith</u>, 278 F.3d 1348, 1355 (D.C. Cir. 2002) ("Instructions must be viewed in the context of the entire instructions to the jury[.]"). Moreover, in the case of ambiguity, the court of appeals has "long recognized that one ambiguous part of an instruction may be made clear by another unambiguous part of the same instruction." <u>United States v. Gaviria</u>, 116 F.3d 1498, 1510 (D.C. Cir. 1997).

In relevant part, the Court instructed the jury on witness tampering as follows:

In order to find the defendant guilty of [Counts Two and Three], you must find that the government proved each of the following four elements beyond a reasonable doubt:

> One, that the defendant knowingly used intimidation and threats, or attempted to do so, or caused another person to do so; second, that the defendant acted with the intent to hinder or delay or prevent the individuals named in the indictment from communicating to *law enforcement authorities* information relating to the commission or the possible commission of a crime; third, that the offense, the underlying offense that he hindered the communication with respect to, the underlying offense, was a federal offense.
>
> In other words, the second element is that he acted with the intent to hinder, delay, or prevent individuals from communicating with *law enforcement authorities* information relating to the commission or possible commission of an offense; the third element is that [the] particular offense must have been a federal offense. But the government does not have to prove that the defendant knew that the crime was a federal offense.
>
> Fourth, that the defendant believed that these other persons might communicate with *federal authorities* regarding the alleged offense.

Nov. 9, 2010 Trial Tr. at 42-43 (emphasis added). Examining this instruction as a whole — especially in view of the discussion of the second and fourth elements of witness tampering — the Court concludes that the jury was properly instructed that the government must prove that the defendant had an intent to prevent communication to a *federal* law enforcement officer.

Furthermore, although neither side references it, the Court continued the instructions on witness tampering as follows: "Now, when you read the indictment — and you'll have a copy of the indictment with you — this [witness tampering] instruction may make more sense than in the abstract." Nov. 9, 2010 Trial Tr. at 43. The Indictment, which again was provided to the jury, mirrors the text of 18 U.S.C. § 1512(b)(3), stating that Mr. Williams "did knowingly intimidate, attempt to intimidate and threaten, persons known to the Grand Jury . . . with the intent to hinder, delay and prevent the communication to a *law enforcement officer of*

13

*the United States* of information relating to the commission or possible commission of a Federal

Offense." Indictment ¶ 7 (emphasis added). Therefore, even if the instruction were unclear

regarding the requirement that the law enforcement officer at issue be a *federal* law enforcement

officer — which it was not — then any such problem was resolved by the express language in the

Indictment. See United States v. Madeoy, 912 F.2d 1486, 1492 (D.C. Cir. 1990) ("[W]e find

that, as a whole, the indictment, the evidence, and the jury instructions leave no doubt that the

defendants were convicted upon the basis of a proper legal theory."); id. at 1493; United States v.

Reyes, 363 Fed. App'x 192, 197 (3d Cir. 2010) ("Both the indictment and the jury instructions

present the relevant law accurately and, read together, are consistent."); see also United States v.

Overmyer, 899 F.2d 457, 465 (6th Cir. 1990) ("If read together with the indictment, the grand

jury instructions adequately informed the grand jury of the elements of the offense."). Because

Mr. Williams has failed to meet his burden of proving the first element of the plain error standard

— namely, that there was in fact an error — the Court need not reach the other three elements.

### *C. Reasonable Likelihood*

Next, Mr. Williams argues that the Court erroneously instructed the jury that "it

could find Mr. Williams guilty of witness tampering if a witness 'might' have communicated

with authorities." Reply at 2. According to Mr. Williams, that instruction presents "a

significantly lower bar than the 'reasonable likelihood' standard mandated by Fowler." Id. Mr.

Williams then argues — presumably addressing both the third prong of the plain error standard

and the standard for acquittal under Rule 29 of the Federal Rules of Criminal Procedure — that

this alleged error was prejudicial because the government did not prove that a reasonable

likelihood existed that a witness would communicate with a federal law enforcement officer.  See Mot. at 6.

The Court agrees with Mr. Williams that the relevant portion of the witness tampering instruction given to the jury in this case was in error in light of Fowler.  But the Court disagrees that the error was plain and further disagrees that, on the evidence presented in this case, a reasonable juror could not have found beyond a reasonable doubt that there was a reasonable likelihood that a relevant communication would have been made to a federal law enforcement officer.  Consequently, Mr. Williams' second argument, along with its related request for a judgment of acquittal or, in the alternative, for a new trial, also fails.

## 1.  Error, but Not Plain

Mr. Williams' argument focuses on the Court's instruction on the fourth element of witness tampering: "Fourth, that the defendant believed that these other persons *might* communicate with federal authorities regarding the alleged offense."  Nov. 9, 2010 Trial Tr. at 42-43 (emphasis added).  As discussed, Mr. Williams raised no objection to this instruction — indeed, this instruction is substantively identical to the one that was jointly proposed by Mr. Williams and the government.  See Proposed Jury Instructions at 44, Oct. 10, 2010 ("Fourth: That defendant believed that these persons *might* communicate with federal authorities regarding the alleged offense.") (emphasis added).

In Fowler, the Supreme Court held that a jury must find that a communication to a federal law enforcement officer was "reasonably likely."  Fowler v. United States, 131 S. Ct. at 2052.  The Court agrees with Mr. Williams that Fowler sets forth a higher standard than the

one on which the jury was instructed in this case, see id. at 2051 (rejecting the government's proposed "reasonably possible" standard), though not by much.  See id. at 2052 ("The Government need not show that such a communication, had it occurred, would have been federal beyond a reasonable doubt, nor even that it is more likely than not. . . . But the Government must show that the likelihood of communication to a federal officer was more than remote, outlandish, or simply hypothetical.").  Compare id. at 2055 (Scalia, J., concurring in the judgment) ("[T]he Court's standard is hopelessly indeterminate.  The Government must show that a communication to a federal officer is 'reasonably likely,' which is less likely than 'more likely than not,' but more likely that 'reasonably possible.'").  This error, however, was not plain.

Neither Mr. Williams nor the government discusses the standard for determining whether the error in the Court's jury instruction was plain in a case such as this.  As the Supreme Court held in Johnson v. United States, 520 U.S. 461, 468 (1997), "where the law at the time of trial was settled and clearly contrary to the law at the time of appeal . . . it is enough that an error be 'plain' at the time of appellate consideration."  By contrast, as our court of appeals recently held, where — as here — "the law was unsettled at the time of trial but became settled" after the jury rendered its verdict, the Court assesses "error as of the time of trial."  United States v. Mouling, 557 F.3d 658, 664 (D.C. Cir. 2009); see United States v. Anderson, 632 F.3d 1264, 1270 (D.C. Cir. 2011) (applying United States v. Mouling).

As of the time of trial in this case, the law on what courts have referred to as the federal nexus requirement in the witness tampering statute — that is, "what, if anything, the Government must show beyond th[e] broad indefinite intent in order to show that the defendant more particularly intended to prevent communication with *federal* officers as well," Fowler v.

16

United States, 131 S. Ct. at 2048 (emphasis in original) — was unsettled. The text of the witness tampering statute is itself unclear on the answer to that question. See 18 U.S.C. §§ 1512(a)(1)(C), (b)(3). Compare Fowler v. United States, 131 S. Ct. at 2051-52 (finding "*possible answers* to this question in the dictionary definition of the word 'prevent,'" and ultimately concluding that the "reasonable likelihood" standard is "*consistent with* the statute's language and objectives") (emphasis added), with id. at 2053 (Scalia, J., concurring in the judgment) (stating that the "'reasonable likelihood' standard has no basis in the statutory text"). And, as the Supreme Court stated in Fowler, the circuits split in their answers to that question:

> [B]ecause the Circuits have disagreed about this . . . matter, [the Court] granted . . . certiorari. Compare United States v. Harris, 498 F.3d 278, 286 (4th Cir. 2007) ("So long as the information the defendant seeks to suppress actually relates to the commission or possible commission of a federal offense, the federal nexus requirement is established[.]"), with United States v. Lopez, 372 F.3d 86, 91-92 (2d Cir. 2004), vacated and remanded on other grounds, 544 U.S. 902 (2005) (requiring Government to show federal crime along with "'additional appropriate evidence'" that "the victim *plausibly* might have turned to federal officials"); see also United States v. Bell, 113 F.3d 1345, 1349 (3d Cir. 1997); United States v. Causey, 185 F.3d 407, 422-23 (5th Cir. 1999); United States v. Wright, 536 F.3d 819, 824-825 (8th Cir. 2008).

Fowler v. United States, 131 S. Ct. at 2048-49 (emphasis in original). The United States Court of Appeals for the District of Columbia Circuit has never addressed the issue.[5]

"[W]here the law is unsettled at trial, objections are far from pointless — they serve a valuable function, alerting the district court to potential error at a moment when the court

---

[5]        On its own review of the law, the Court found one district court decision in this jurisdiction holding that "[a] violation of § 1512(b)(3) requires only 'the *possibility* or *likelihood* that [a defendant's] false and misleading information would be transferred to federal authorities[.]" United States v. Ring, 628 F. Supp. 2d 195, 222 (D.D.C. 2009) (quoting United States v. Veal, 153 F.3d 1233, 1251-52 (11th Cir. 1998)) (emphasis in original).

17

can take remedial action." United States v. Mouling, 557 F.3d at 664. Yet despite the unclear statutory text, the split in the circuits, and the lack of authority on point from the D.C. Circuit, Mr. Williams presented no objection to the instruction provided to the jury; to the contrary, he jointly proposed it with the government, and expressly stated at trial that the instruction on the "[witness tampering] elements [is] fine." Nov. 8, 2010 a.m. Trial Tr. at 17. Consequently, because at the time of Mr. Williams' trial the statutory text was unclear and "no clear circuit precedent established the impropriety of [the jury instruction on witness tampering], any error in employing [this instruction] cannot have been plain." United States v. Mouling, 557 F.3d at 664; see United States v. Anderson, 632 F.3d at 1270; see also United States v. Perry, 479 F.3d 885, 893 n.8 (D.C. Cir. 2007) (declaring that "absent precedent from either the Supreme Court or this court . . . , [an] asserted error . . . falls far short of plain error" unless it violates a legal norm that is "absolutely clear (for example, because of the clarity of a statutory provision or court rule)") (quotations omitted) (alteration in original); United States v. Merlos, 8 F.3d 48, 51 (D.C. Cir. 1993). Compare In re Sealed Case, 573 F.3d 844, 852 (D.C. Cir. 2009) (concluding that error was plain despite circuit split in view of the "clear statutory language at issue").

2. Evidence Offered at Trial on the Fourth Element of the Witness Tampering Charge

Having concluded that the error regarding the jury instructions on the federal nexus requirement was not plain, the Court normally would not need to go further to determine how, if at all, this error affected Mr. Williams' trial. See United States v. Mouling, 557 F.3d at 664. Such a factual analysis falls under the third prong of the plain error test: whether "the error affected the [defendant's] substantial rights," which means "that there must be a reasonable

probability that the error affected the outcome of the trial." United States v. Marcus, 130 S. Ct. at 2164 (quotations omitted). But in his motion, Mr. Williams goes further than arguing that the error affected the outcome of his trial. Mr. Williams argues he in fact is entitled to judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure because, under the more demanding standard set forth in Fowler, "a reasonable jury could not have found beyond a reasonable doubt that there was a 'reasonable likelihood' [that] a relevant communication would have been made to a federal law enforcement officer." Reply at 3.

The Court disagrees with Mr. Williams. The government presented the following evidence at trial: On the night of July 3, 2005, near the Ramstein Air Force Base in Germany, Mr. Williams and others initiated Sergeant Johnson into their gang, the Gangster Disciples, by striking and kicking Sergeant Johnson for more than six minutes. See Oct. 25, 2010 p.m. Trial Tr. at 26-33; see also Oct. 25, 2010 a.m. Trial Tr. at 109, 115. The participants in this gang initiation, which was referred to as a "jump-in," Oct. 25, 2010 a.m. Trial Tr. at 109, included military service members of the United States Air Force and the United States Army, as well as Mr. Williams, who had been in the Air Force for eight years, but was honorably discharged on May 3, 2005. See id. at 91-94, 98-107; Oct. 25, 2010 p.m. Trial Tr. at 5-6; Def. Ex. 23a at 1, Certificate of Release or Discharge from Active Duty.

Sergeant Johnson died on the morning of July 4, 2005 from injuries sustained during the jump-in. See Oct. 28, 2010 a.m. Trial Tr. at 73 (expert opinion concluding that Sergeant Johnson "died of multiple blunt force injuries, with particular harm done by blows to the head"). Later that day, after learning of Sergeant Johnson's death, Mr. Williams and certain members of the Gangster Disciples — including Nicholas Sims, Latisha Ellis, Rodney Howell,

and Terrence Norman — had a meeting at a cookout in which they discussed "a cover-up." Oct.

25, 2010 p.m. Trial Tr. at 36. Nicholas Sims, one of the participants in the jump-in, testified

about the meeting as follows:

> *Q.* What did you all discuss at this meeting?
> *A.* A cover-up.
> *Q.* And who talked about a cover-up?
> *A.* Rico.
> *Q.* What did he say?
> *A.* He said a Turkish people jumped him.
> *Q.* And when you say "a Turkish people jumped him", what did he [say] that you should say you about Turkish people jumping him?
> *A.* That he jumped Johnson.
> *Q.* Well, who was supposed to say that?
> *A.* All of us if we've being questioned anything about Johnson's death. . . .
> *Q.* Did he say anything to you all about talking to the authorities?
> *A.* Yes.
> *Q.* What did he say?
> *A.* One to say that story; and two, *if anybody tells, they are basically done for.*
> *Q.* And what does that mean? What does that mean to you?
> *A.* *That he'll kill us.*

Oct. 25, 2010 p.m. Trial Tr. at 36-37 (emphasis added).

The government then offered the testimony of Florentino Charris, another member

of the Gangster Disciples. See Oct. 26, 2010 p.m. Trial Tr. at 49, 51-52. Mr. Charris was not

present at Sergeant Johnson's jump-in. Id. at 55. After the jump-in, however, when Sergeant

Johnson was returned to his barracks, Mr. Williams assigned Mr. Charris the task of "watch[ing]

Sergeant Johnson" throughout the night. Id. at 59; see also id. at 60-65, 69-71. At some point,

Mr. Charris went to sleep; when Mr. Charris awoke on July 4, 2005, he said that Sergeant

Johnson "felt stiff, he was purple, and his eyes were closed." Id. at 72. So Mr. Charris alerted

the military staff member on duty, and that staff member called an ambulance.  Id.  The ambulance arrived about ten minutes later, and, after unsuccessfully attempting to revive Sergeant Johnson, medical personnel pronounced him dead.  See id. at 73.

Shortly thereafter, agents of the Army's Criminal Investigation Division attempted to talk to Mr. Charris about Sergeant Johnson's death.  Oct. 26, 2010 p.m. Trial Tr. at 73.  But Mr. Charris was "shell shocked," and could not speak with CID at that time.  Id.  Later that day, around 1:00 p.m. or 2:00 p.m., Mr. Charris did in fact speak with CID, stating to CID that he "got a call from Sergeant Johnson saying that he didn't feel well, that he — if it would be all right if [Mr. Charris] came over and watched him."  Id. at 74.  Mr. Charris admitted at trial that this was not the truth, and that he was trying to "[c]over up" the facts surrounding Sergeant Johnson's death.  Id.

After Mr. Charris finished speaking with CID agents, he went back to his barracks.  He then spoke with Mr. Williams, who was at the cookout, over the telephone.  Mr. Charris described his conversation with Mr. Williams as follows:

> Q.   What did [Mr. Williams] say to you?
> A.   *He tried to tell me a story that I needed to tell CID.*
> Q.   What was the story you were supposed to tell CID?
> A.   Sergeant Johnson had got jumped downtown.
> Q.   Did he say who you were supposed to say jumped him
>       downtown?
> A.   I'm not sure who he said at this point.
> Q.   Did he say anything else to you?
> A.   And if I told anybody the truth, that I could cancel
>       Christmas. . . .
> Q.   What did that mean to you?
> A.   That I could end up dead.

Oct. 26, 2010 p.m. Trial Tr. at 75-76 (emphasis added).  Mr. Charris then told Mr. Williams that he already had spoken with CID agents.  Id. at 77.  Mr. Williams told Mr. Charris that he "needed to go back"; Mr. Charris did as he was told, returning to speak with CID later that night and telling them that "Sergeant Johnson had got jumped downtown, and that was basically it."  Id. at 78.

Mr. Williams concedes, as he must, that this testimony "indicates that Mr. Williams was concerned about communications to investigators from the military's Criminal Investigative Divisions . . . in particular."  Mot. at 4; see also Reply at 4 n.2 (stating that "a reasonable person in Mr. Williams' position would only have had CID agents in mind").  But Mr. Williams argues that such agents do not qualify as federal law enforcement officers for purposes of 18 U.S.C. § 1512.  According to Mr. Williams, because such CID agents do not qualify as federal law enforcement officers and because the government introduced no other evidence regarding the involvement of federal law enforcement officers, he is entitled to judgment of acquittal on Count Two.

Under the witness tampering statute, 18 U.S.C. § 1512, a federal law enforcement officer

> means an officer or employee of the Federal Government, or a person authorized to act for or on behalf of the Federal Government or serving the Federal Government as an adviser or consultant . . . authorized under law *to engage in or supervise the prevention, detection, investigation, or prosecution of an offense.*

18 U.S.C. § 1515(a)(4)(A) (emphasis added).

As Mr. Williams acknowledges, under 10 U.S.C. § 1585(a), the Secretary of Defense has the authority to authorize any CID special agent

> (1) to execute and serve any warrant or other process issued under the authority of the United States; and

> (2) to make arrests without a warrant —

>> (A) for any offense against the United States committed in the presence of that agent; and

>> (B) for any felony cognizable under the laws of the United States if the agent has probable cause to believe that the person to be arrested has committed or is committing the felony.

18 U.S.C. § 1585(a). The Secretary has promulgated rules to this effect, providing that "[m]ilitary and civil special agents assigned to the Defense Criminal Investigative Organizations are . . . authorized . . . to make an arrest, outside the United States, of a person who has committed an offense under section 3261(a) of the [Military Extraterritorial Jurisdiction] Act." 32 C.F.R. § 153.5(b)(4)(iv). Moreover, as the government points out, CID itself is authorized to serve as the "lead investigative organization" in MEJA cases. Id. § 153.5(b)(1)(iii); see Opp. at 14-17. The Court therefore concludes that CID agents fall within the definition of federal law enforcement officers for purposes of 18 U.S.C. § 1512.

The Court further concludes — and Mr. Williams himself concedes — that there was specific evidence introduced at trial from which a reasonable juror could infer that Mr. Williams had CID agents in mind when he intimidated or threatened either Latisha Ellis, Nicholas Sims, Rodney Howell, or Terrence Norman at the cookout on July 4, 2005, as alleged in the Indictment. See Indictment ¶ 7; see also Mot. at 4; Reply at 4 n.2. Mr. Williams has failed to

meet his burden of proving that a reasonable juror "*must necessarily* have had a reasonable doubt as to the defendant['s] guilt."  United States v. Weisz, 718 F.2d at 437 (emphasis in original).  He therefore is not entitled to judgment of acquittal.  Nor is Mr. Williams entitled to a new trial, as he has failed to raise any error sufficient to require reversal on appeal.  See 3 CHARLES ALAN WRIGHT & SARAH N. WELLING, FEDERAL PRACTICE & PROCEDURE § 589 (4th ed. 2011).

## IV.  CONCLUSION

For the foregoing reasons, Mr. Williams' motion for judgment of acquittal on Count Two or, in the alternative, for a new trial [Dkt. Nos. 152, 153] will be DENIED.  An Order consistent with this Opinion shall issue this same day.

SO ORDERED.


/s/
_____
PAUL L. FRIEDMAN
DATE:  November 17, 2011                     United States District Judge