UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| v. | ) ) | Criminal No. 09-0026 (PLF) |
| RICO RODRIGUS WILLIAMS, | ) ) ) | |
| Defendant. | ) ) | |

OPINION AND RESTITUTION ORDER

On April 20, 2012, this Court sentenced defendant Rico Rodrigus Williams to twenty-two years of incarceration on his conviction on one count of second degree murder and ten years of incarceration on his conviction on one count of witness tampering, the sentences to run concurrently. The Court also imposed five years of supervised release, with conditions, following the period of incarceration. At sentencing, the Court heard brief argument from counsel regarding restitution. The Court informed the defendant that restitution would be ordered but, pursuant to statutory authorization, see 18 U.S.C. § 3664(d)(5), it deferred determination of the amount of restitution until after the government and the defendant had the opportunity to file supplemental briefs on the issue. This briefing is now complete. Upon careful consideration of the parties' initial sentencing memoranda and supplemental briefs, including letters from experts attached as exhibits, the relevant legal authorities, and the entire record in this case, the Court will order restitution to the estate of the deceased, Sergeant Juwan Johnson, in the amount of $756,000.[1]

---

[1] The papers reviewed in connection with this matter include the following: the jury verdict form ("Verdict Form"), Dkt. No. 137; the government's memorandum in aid of sentencing ("Govt.'s Mem."), Dkt. No. 171; defendant's memorandum in aid of sentencing

I.  BACKGROUND

Defendant Rico Rodrigus Williams, a former member of the United States Air Force, killed Army Sergeant Juwan Johnson during a Gangster Disciples gang initiation that took place on July 3, 2005, near the Ramstein Air Force Base in Germany.  On November 15, 2010, after a twelve-day jury trial, Mr. Williams was found guilty of one count of second degree murder, in violation of 18 U.S.C. § 1111(a), and one count of witness tampering, in violation of 18 U.S.C. § 1512(b)(3).  See Verdict Form at 1-2.  The Court subsequently denied defendant's post-trial motions for judgment of acquittal and for a new trial.  See June 3, 2011 Tr., Dkt. No. 150; Order, Dkt. No. 161 (Nov. 17, 2011) (denying motion on count two); Order, Dkt. No. 163 (Nov. 17, 2011) (denying motion on count one).

The parties then filed sentencing memoranda with the Court.  The government sought a sentence of life imprisonment, while Mr. Williams urged the Court to sentence him to no more than ten years of incarceration.  In addition, the government requested that the Court order Mr. Williams to pay $250,000 in restitution for Sergeant Johnson's lost future income, pursuant to the Mandatory Victims Restitution Act of 1996, 18 U.S.C. § 3663A ("MVRA").  The government estimated that Sergeant Johnson would have earned approximately $1,600,000 over the course of his lifetime, far in excess of what the government mistakenly believed was a $250,000 statutory cap on restitution.  See Govt.'s Mem. at 21.  Mr. Williams, through counsel,

---

("Def.'s Mem."), Dkt. No. 170; defendant's reply to government's sentencing memorandum and response to the Court's Memorandum Opinion and Order ("Def.'s Initial Reply"), Dkt No. 177; the Judgment, Dkt. No. 181; the government's addendum to its memorandum in aid of sentencing ("Govt.'s Addendum"), Dkt. No. 185; June 4, 2012 letter by Colin England ("First England Letter"), Dkt. No. 185-1; defendant's opposition to government's addendum ("Def.'s Opp'n"), Dkt. No. 195; December 14, 2012 letter by Richard Edelman ("Edelman Letter"), Dkt. No. 195-1; the government's reply to defendant's opposition ("Govt.'s Reply"), Dkt. No. 199; March 27, 2013 letter by Colin England ("Second England Letter"), Dkt. No. 199-1; and the transcript of the sentencing hearing ("Apr. 20, 2012 Tr."), to be filed on this Court's docket.

conceded that restitution may be ordered in cases such as his, but he challenged the government's estimate as purely speculative. Def.'s Initial Reply at 8.

On April 20, 2012, the Court sentenced Mr. Williams to imprisonment for a period of twenty-two years on his second degree murder conviction and ten years on the witness tampering count, the two sentences to run concurrently. See Apr. 20, 2012 Tr. at 99; Judgment at 3. The Court also concluded that Mr. Williams was required to pay restitution but that more information was required before it could determine the appropriate amount. Apr. 20, 2012 Tr. at 99.[2] Upon agreement by the parties, the Court postponed determination of the restitution amount until after the government and the defendant filed supplemental briefs. Id. at 60-64, 99; Judgment at 5, 7.[3]

Despite its earlier view, the government, in its Addendum to its Memorandum in Aid of Sentencing, now correctly notes that no statutory cap applies in this case. Govt.'s Addendum at 1-2 n.1. It therefore requests that the defendant be ordered to pay the full value of

---

[2] Although the total amount of restitution had not yet been determined, the Court ordered that upon release from prison, the defendant was to pay the balance of any restitution owed at a rate of no less than $50.00 each month. Apr. 20, 2012 Tr. at 100; Judgment at 8.

[3] By statute, if the victim's losses are not ascertainable prior to sentencing, the court "shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing." 18 U.S.C. § 3664(d)(5). The deadline for determining restitution in this case initially was July 19, 2012. The government and the defendant each filed unopposed motions for extensions of time within which to file their respective briefs on the restitution issue, and neither party objects to restitution being determined after the statutory deadline. See, e.g., Defendant's Unopposed Motion for Extension of Time for Briefing Schedule Regarding Amount of Restitution, Dkt. No. 194 (seeking extension of filing deadline and stipulating to extension of time for the Court's ruling on restitution); Government's Unopposed Motion to Late File Its Reply to Defendant's Opposition to Government's Addendum to Its Memorandum in Aid of Sentencing, Time Having Expired and For an Extension of Time for the Court's Ruling on the Issue of Restitution, Dkt. No. 198. The Court's failure to determine the amount of restitution within ninety days after sentencing does not deprive it of jurisdiction to impose restitution now. Dolan v. United States, 130 S. Ct. 2533, 2539 (2010).

Sergeant Johnson's lost future earnings, which the government estimates to be $756,000. Govt.'s Reply at 1, 9-10.  Mr. Williams maintains that the government has based its estimate of the victim's lost income on mere speculation, thereby failing to meet its burden of proving the amount of the victim's losses by a preponderance of the evidence.  Def.'s Opp'n at 7-8.  He also argues that the statute does not provide for restitution for the lost future income of a deceased victim.  Id. at 5-6.

## II.  ANALYSIS

### A.  *The MVRA Applies in this Case*

Courts have no inherent authority to order restitution; they may do so only as authorized by statute.  See United States v. Papagno, 639 F.3d 1093, 1096 (D.C. Cir. 2011).  In this case, restitution is both authorized and mandated by the MVRA, 18 U.S.C. § 3663A, which requires defendants convicted of certain crimes to pay restitution to the victim, or the estate of the victim, for losses proximately caused by the defendant's criminal conduct.  The statute provides as follows:

> Notwithstanding any other provision of law, when sentencing a defendant convicted of an offense described in subsection (c), the court shall order, in addition to . . . any other penalty authorized by law, that the defendant make restitution to the victim of the offense or, if the victim is deceased, to the victim's estate.

18 U.S.C. § 3663A(a).  Subsection (c) provides that the MVRA applies in sentencing proceedings for convictions of certain offenses, including any offense that constitutes a crime of violence.  Id. § 3663A(c)(1)(A)(i).

Second degree murder undoubtedly is a crime of violence.  See 18 U.S.C. § 16(b) (defining crime of violence as offense containing element of physical force against person or property of another or involving substantial risk of such force); United States v. Serawop, 505

4

F.3d 1112, 1114-15 and n.1 (10th Cir. 2007) (applying MVRA to lesser offense of voluntary manslaughter).  The MVRA therefore applies to Mr. Williams' conviction for second degree murder.  For that reason, this Court must order restitution to Sergeant Johnson's estate "in the full amount of [his] losses [resulting from the murder] as determined by the Court and without consideration of the economic circumstances of the defendant."  18 U.S.C. § 3664(f)(1)(A).

> B.  *The MVRA Requires Restitution for Lost Income in this Case*

Mr. Williams raises a threshold question of whether restitution for lost income is authorized under subsection (b) of Section 3663A.  See Def.'s Opp'n at 5 ("[Section] 3663A seemingly does not provide for restitution of lost income as a result of death.").  That subsection provides, in relevant part:

> The order of restitution shall require that such defendant . . .
>
> . . .
>
> (2) in the case of an offense resulting in bodily injury to a victim—
>
> (A) pay an amount equal to the cost of necessary medical and related professional services and devices relating to physical, psychiatric, and psychological care . . .
>
> (B) pay an amount equal to the cost of necessary physical and occupational therapy and rehabilitation; and
>
> (C) reimburse the victim for income lost by such victim as a result of such offense;
>
> (3) in the case of an offense resulting in bodily injury that results in the death of the victim, pay an amount equal to the cost of necessary funeral and related services; and

> (4) in any case, reimburse the victim for lost income and . . . other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense.

18 U.S.C. § 3663A(b).[4]

Defendant points to subsection (b)(2) of the statute, which provides that for "an offense resulting in bodily injury to a victim," the defendant must reimburse the victim for income lost as a result of the offense. Def.'s Opp'n at 5. The defendant then notes that the following subsection – subsection (b)(3) – authorizes restitution for funeral expenses where the offense "causes 'bodily injury *that results in the death of the victim.*'" Def.'s Opp'n at 5-6 (quoting 18 U.S.C. § 3663A(b)(3)) (emphasis added). Defendant argues that because subsection (b)(2) does not contain the phrase "that results in the death of the victim," while subsection (b)(3) does, subsection (b)(2) necessarily does not apply to offenses where the victim died. Id. at 6 ("[I]t appears that the lost income provision of subsection (b)(2) does not provide for lost income where death results.").

Mr. Williams' argument is inconsistent with the plain meaning of the MVRA. Under the most natural reading of the statute, the phrase "an offense resulting in bodily injury" refers to a category that includes offenses in which the victim died as a result of the bodily injury as well as offenses in which the victim survived the injury. Furthermore, it would make little sense to reduce restitution in cases where the injury suffered was so severe as to be fatal. As the Ninth Circuit has observed,

---

[4] Although subsections (b)(2) and (b)(4) refer to reimbursement to the victim, 18 U.S.C. § 3663A(a) clarifies that if the victim is deceased, restitution shall be made to the victim's estate. See 18 U.S.C. § 3663A(a)(1) (requiring "restitution to the victim of the offense or, if the victim is deceased, to the victim's estate"); id. § 3663A(a)(2) (providing that if victim is a minor, incompetent, incapacitated, or deceased, "the legal guardian of the victim or representative of the victim's estate, another family member, or any other person appointed as suitable by the court, may assume the victim's rights under this section").

> It would be illogical to assume that the ultimate death of a person who suffered bodily injury eliminates restitution for lost income. To not award restitution for future lost income would lead to a perverse result where murderers would be liable for markedly less in restitution than criminals who merely assault and injure their victims.

United States v. Cienfuegos, 462 F.3d 1160, 1164 (9th Cir. 2006); see also United States v. Serawop, 505 F.3d at 1119 (noting "anomalous result" that would occur if subsections (b)(2) and (b)(3) were read in the disjunctive). And although the D.C. Circuit has not considered this issue, courts of appeals in other circuits have issued thoughtful and persuasive decisions in which they have held that the MVRA requires restitution for the lost future income of deceased victims. See United States v. Serawop, 505 F.3d at 1118-20; United States v. Cienfuegos, 462 F.3d at 1163-69 (9th Cir. 2006); United States v. Oslund, 453 F.3d 1048, 1062-63 (8th Cir. 2006).

*C. The Government Has Adequately Proved the Amount of Sergeant Johnson's Losses*

The government bears the burden of demonstrating by a preponderance of the evidence the amount of a victim's losses. 18 U.S.C. § 3664(e); United States v. Fair, 699 F.3d 508, 513 (D.C. Cir. 2012).

The Court may not order restitution for losses that are unsubstantiated or speculative. See United States v. Cienfuegos, 462 F.3d at 1168-69 ("Speculative losses are incompatible with the MVRA's statutory scheme because 'one cannot bear the burden of proving the amount of a loss by a preponderance of the evidence when it is no more than possible that the loss will occur at all.'") (internal quotation and alteration omitted). But as the D.C. Circuit has explained, "'determining the dollar amount of a victim's losses attributable to the defendant will often be difficult' and 'such a determination will inevitably involve some degree of approximation,' which is 'not fatal.'" In re Sealed Case, 702 F.3d 59, 66 (D.C. Cir. 2012)

7

(quoting United States v. Monzel, 641 F.3d 528, 540 (D.C. Cir. 2011)). "Rather, the district court's charge is to 'estimate, based upon facts in the record, the amount of [the] victim's loss with some reasonable certainty.'" Id. (alteration in original) (quoting United States v. Monzel, 641 F.3d at 540).

In its addendum, filed after Mr. Williams' sentencing hearing, the government requested $835,000 in restitution for Sergeant Johnson's lost future wages and supported its estimate with a three-page letter prepared by an actuarial expert, Colin England. See Govt.'s Addendum; First England Letter.[5] In response, the defendant challenged Mr. England's analysis as "inaccurate, unreliable, and deficient in a number of respects." Def.'s Opp'n at 7. The defendant submitted a letter from his own expert, Professor Richard Edelman, who raised specific objections to several of Mr. England's assumptions. See Edelman Letter.[6] The government then filed a reply in which it reduced its request to $756,000. See Govt's Reply at 1. The government also included an eight-page letter by Mr. England, in which Mr. England addressed Dr. Edelman's objections, revised certain assumptions and explained his reasons for doing so, and provided additional support for those assumptions that he left unaltered. See Second England Letter. The defendant did not seek leave to file a sur-reply.

After reviewing the evidence and analysis submitted by the parties, as well as the evidence presented at trial, the Court is persuaded by a preponderance of the evidence that $756,000 is a fair estimate of Sergeant Johnson's lost income. It is impossible, of course, to

---

[5] Mr. England is a Fellow of the Society of Actuaries, a Fellow of the Conference of Consulting Actuaries, an Enrolled Actuary and a Certified Employee Benefits Specialist. Govt.'s Addendum Ex. 2 at 3.

[6] Dr. Edelman holds a Ph.D. in Business Administration and serves as Professor Emeritus in the Department of Finance and Real Estate at The American University. Def.'s Opp'n Ex. 1 at 12.

8

know with certainty the type of work that Sergeant Johnson would have pursued upon his discharge from the service, or what professional success he might have found. But a victim's losses need not "be proven with exactitude." In re Sealed Case, 702 F.3d at 66; see also United States v. Serawop, 505 F.3d at 1125 (affirming district court's order of restitution for lost future earnings of deceased infant victim). The government has calculated its estimate using reasonable actuarial assumptions supported by evidence of the deceased victim's prior training and experience and the relevant labor market conditions.

Noting that Sergeant Johnson served as a truck driver in the Army, Mr. England assumes that Sergeant Johnson was likely to pursue and obtain work as a truck driver upon his return to the States. Govt.'s Reply at 9; Second England Letter at 2-3. Mr. England then estimates that Sergeant Johnson's initial salary upon return to the United States would have been $30,000, with annual pay raises of 2.5% and a benefits package of 40% of pay. See Second England Letter at 2-3; 5. He bases these numbers on the current salary levels, average pay increases, and average benefit packages within the trucking industry, with a focus on trucking companies in Sergeant Johnson's hometown of Baltimore, Maryland. Id.

Mr. England assumes that Sergeant Johnson, who died at the age of 25, would have worked for 30 years, until the age of 55. Second England Letter at 4. This is a conservative assumption – Sergeant Johnson very well might have worked longer, which would result in a higher estimate – but it is a reasonable one. And although the defendant suggests that Sergeant Johnson's ability to work might have been affected by a back injury he suffered while stationed in Iraq, see Def.'s Opp'n at 4, the Court finds no evidence in the record that Sergeant Johnson suffered a permanent or disabling injury.

Mr. England reduces the estimated gross amount of Sergeant Johnson's lost future earnings by 33 percent, to reflect that portion of Sergeant Johnson's income that would have been used directly by Sergeant Johnson for his own consumption needs. Second England Letter at 7. This "consumption deduction" is often incorporated into lost earnings awards in the civil context, see, e.g., Kiser v. Schulte, 648 A.2d 1, 4 (Pa. 1994), and it is permitted in criminal restitution as well. See United States v. Serawop, 505 F.3d at 1128 n.6 (noting that trial court had discretion to reduce restitution amount by estimated consumption expenses); see also United States v. Marcello, No. 02 CR 1050-2-3-4-7-10, 2009 WL 929959, at *3 (N.D. Ill. 2009) (applying consumption deduction), *aff'd in part, rev'd in part on other grounds sub nom.* United States v. Schiro, 679 F.3d 521 (7th Cir. 2012).

Mr. England does not deduct the taxes that Sergeant Johnson likely would have paid to the government, nor does he include the government transfers that Sergeant Johnson likely would have received. See Second England Letter at 8. The Court finds this omission to be appropriate. As neither the government nor the defendant has put forth evidence or information upon which to base estimates of taxes or transfers, such an adjustment would be speculative.

The government has appropriately discounted the present value of the estimated future earnings, minus consumption expenses, using an annual discount rate of 7%. Second England Letter at 8-9. This discount rate is relatively high, cf. Calva-Cerqueira v. United States, 281 F. Supp. 2d 279, 293, 297-98 (D.D.C. 2003) (applying discount rate of 4.5%), but it is within the range of reasonableness.

Calculations of lost future income inevitably are approximated. But the D.C. Circuit, as well as other courts of appeals, have made clear that a limited amount of imprecision is acceptable. See In re Sealed Case, 702 F.3d at 66 (approving restitution for estimated future

10

mental health expenses of victims); United States v. Monzel, 641 F.3d at 540 (reversing district court's order of nominal restitution to victims of child pornography crimes and remanding for further consideration of victims' losses); United States v. Cienfuegos, 462 F.3d at 1161, 1168-69 (reversing district court's denial of restitution for deceased victim's lost future earnings, where court of appeals found that those earnings were "reasonably calculable").[7]  Here, the Court finds sufficient facts in the record with which to calculate Sergeant Johnson's lost future income with "some reasonable certainty."  In re Sealed Case, 702 F.3d at 66.

> Sergeant Johnson was 25 years old when he died, and he was in the process of leaving the military at the time of his death.  He was healthy and, the testimony at trial showed, was in good physical condition.  He was a high school graduate who drove trucks of supplies while serving in Iraq.  The Court finds that Sergeant Johnson possessed employable skills and very likely would have obtained gainful civilian employment upon his return to Baltimore.  The Court also finds that Sergeant Johnson most likely would have been employed as a civilian for at least thirty years.  Based on these findings, and the actuarial assumptions discussed above, the Court concludes that the government has proven by a preponderance of the evidence that Sergeant Johnson's lost future income would be approximately $756,000.

---

[7]     When considering a prior statute that authorized but did not mandate restitution, the Seventh Circuit disapproved of restitution for lost future earnings, on the basis that "the difficult problem of translating an uncertain future stream of earnings into a present value . . . is not a problem meet for solution in a summary proceeding ancillary to sentencing for a criminal offense."  United States v. Fountain, 768 F.2d 790, 801-02 (7th Cir. 1985) (Posner, J.).  While perhaps still a valid observation, such considerations have been effectively superseded by the MVRA, which unequivocally imposes mandatory restitution for future losses that must be approximated, see United States v. Schiro, 679 F.3d at 534 (Posner, J.) (affirming order of restitution for lost future earnings under the MVRA), except in cases where no reasonable approximation can be made.  See 18 U.S.C. § 3663A(c)(3).

### D. Restitution Will Not Be Capped at $250,000

The defendant urges the Court to limit restitution to $250,000, based on the government's earlier misstatement that restitution was statutorily capped at this amount. The defendant asserts that his consent to an extension of time for a determination of restitution beyond the date of sentencing was "based upon the government's explicit representation that restitution could not exceed $250,000." Def.'s Opp'n at 8.

Contrary to defendant's assertion, there is no evidence in the record that he conditioned his consent to a continuance on the mistaken reference to a $250,000 cap or that he was prejudiced by the delay. As the Supreme Court recently noted, the statutory requirement of prompt determination of restitution is intended to protect victims of crime, rather than to provide certainty to defendants. See Dolan v. United States, 130 S. Ct. at 2539-40. The only harm suffered by Mr. Williams is that the delay provided the government with the opportunity to further research the question and to identify its legal error. This does not provide a sufficient basis for limiting the amount of restitution to Sergeant Johnson's estate.

The Court postponed determination of restitution and ordered supplemental briefing precisely because it lacked a complete understanding of the relevant law and facts governing restitution in this case. Had the Court adopted the government's error regarding the law, it would have done so in plain violation of the MVRA, which requires that the Court "order restitution to each victim in the *full* amount of each victim's losses." 18 U.S.C. § 3664(f)(1)(A) (emphasis added). The Court will order restitution for the full $756,000 supported by the record.

For the reasons stated above, it is hereby

ORDERED that defendant Rico Williams shall pay restitution in the amount of $756,000 to the estate of Juwan Johnson; it is

FURTHER ORDERED that during the period of incarceration: (1) if the defendant Rico Williams earns wages in a Federal Prisons Industries ("UNICOR") job, then the defendant shall pay fifty percent (50%) of wages earned toward the financial obligations imposed by this Restitution Order; and (2) if the defendant does not work in a UNICOR job, then the defendant shall pay a minimum of $25 per quarter toward the total financial obligations in this Order; it is

FURTHER ORDERED that upon release from incarceration, defendant Rico Williams shall pay restitution at the rate of ten percent (10%) of his monthly gross earnings, provided that he shall pay no less than $50 per month, until such time as the Court may alter that payment schedule; it is

FURTHER ORDERED that the defendant shall notify the Court, the Attorney General, and the Probation Office of any material change in his economic circumstances that might affect his ability to pay restitution; it is

FURTHER ORDERED that these payments do not preclude the government from using other assets or income of the defendant to satisfy the financial obligations imposed by this Order; and it is

FURTHER ORDERED that the Clerk of the Court shall prepare an Amended Judgment for the Court's signature.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
DATE:  May 24, 2013                     United States District Judge