UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
UNITED STATES OF AMERICA            )
                                    )
        v.                          )        Criminal No. 09-0026 (PLF)
                                    )
RICO RODRIGUS WILLIAMS,             )
                                    )
        Defendant.                  )
_____ )

OPINION

        The matter is before the Court on the motion [Dkt. No. 246] of the United States

for restitution under the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A, or

in the alternative, under the Victim and Witness Protection Act ("VWPA"), 18 U.S.C. § 3663.

Defendant Rico Rodrigus Williams opposes the motion. Upon careful consideration of the

parties' papers, the relevant legal authorities, and the entire record in this case, the Court will

grant the motion in part.[1]

_____
        [1]        In connection with the pending motions, the Court has reviewed the following
filings, including the exhibits attached thereto: the May 22, 2012 Presentence Investigation
Report ("PSR") [Dkt. No. 184]; the May 3, 2017 Order Vacating Restitution Order ("May 3,
2017 Order") [Dkt. No. 231]; the Superseding Information [Dkt. No. 236]; the Plea Agreement
[Dkt. No. 237]; the Statement of Offense [Dkt. No. 238]; the Amended Judgment [Dkt. No. 241];
United States' Motion for Restitution ("Mot.") [Dkt. No. 246]; Mr. Williams' Unopposed
Motion for Extension of Time to File Response to Restitution Motion [Dkt. No. 247]; Mr.
Williams' Opposition to Restitution Motion ("Opp'n") [Dkt. No. 249]; United States'
Unopposed Motion for Extension of Time to File Reply in Support of Restitution Motion
[Dkt. No. 251]; United States' Reply in Support of Restitution Motion ("Reply") [Dkt. No. 252];
the Joint Status Report [Dkt. No. 253]; Mr. Williams' Supplemental Brief ("Williams Supp.")
[Dkt. No. 258]; and United States' Supplemental Brief ("U.S. Supp.") [Dkt. No. 259].

## I. BACKGROUND

Mr. Williams, a former member of the United States Air Force, killed Army Sergeant Juwan Johnson during a gang initiation that took place on July 3, 2005 near the Ramstein Air Force Base in Germany. See United States v. Williams, 946 F. Supp. 2d 112, 114 (D.D.C. 2013). On November 15, 2010, after a twelve-day jury trial, Mr. Williams was convicted of one count of second degree murder, in violation of 18 U.S.C. § 1111(a), and one count of witness tampering, in violation of 18 U.S.C. § 1512(b)(3). See United States v. Williams, 946 F. Supp. 2d at 114. The Court sentenced Mr. Williams in April 2012 to twenty-two years in prison on his second degree murder conviction and ten years in prison on his witness tampering conviction, the two sentences to run concurrently. See id. at 113. The Court also imposed five years of supervised release, with conditions, following the period of incarceration. See id. At sentencing, the Court informed the parties that restitution would be ordered, but deferred determination of the amount of restitution until the parties had an opportunity to file supplemental briefs. See id. Following supplemental briefing, in May 2013, the Court ordered Mr. Williams to pay restitution in the amount of $756,000 to Sergeant Johnson's estate under the MVRA. See id. at 114-15.[2]

In February 2016, the D.C. Circuit reversed the conviction for second degree murder and remanded for a new trial. See United States v. Williams, 836 F.3d 1, 19 (D.C. Cir. 2016). This Court subsequently vacated the second degree murder conviction and the restitution

---

[2]     The United States originally requested $250,000 based on the mistaken understanding that restitution was statutorily capped at that amount. Mr. Williams asks the Court to limit restitution to $250,000, asserting that he agreed to postpone the determination of restitution based on the representation that restitution could not exceed that amount. See Opp'n at 4 n.3. The Court rejected that argument in its prior restitution opinion, see United States v. Williams, 946 F. Supp. 2d at 119-20, and does so again here for the same reasons.

order based on that conviction.  <u>See</u> May 3, 2017 Order.  On June 15, 2017, Mr. Williams pled

guilty to a superseding information charging him with one count of involuntary manslaughter

under 18 U.S.C. § 1112(a).  <u>See</u> Plea Agreement.  That same day, the Court sentenced Mr.

Williams to eight years in prison for involuntary manslaughter and eight years in prison for

witness tampering, those sentences to run concurrently, followed by three years of supervised

release.  <u>See</u> Amended Judgment at 3.  The Court deferred determination of the amount of

restitution pending further briefing from the parties.  <u>See</u> <u>id</u>. at 8.

  In October 2017, the United States filed the instant motion for restitution.  The

United States asks the Court to order restitution under the MVRA in the amount of $756,000

– the full amount of Sergeant Johnson's future lost income – based on the same evidence and

expert analysis considered by the Court in its prior restitution opinion.  In the alternative, the

United States argues that the Court has discretion to award the same amount of restitution under

the VWPA.  Mr. Williams responds that the MVRA does not apply in this case.  As to the

VWPA, Mr. Williams argues that the VWPA does not authorize restitution based on future lost

income and that even if it did, the Court should decline to award restitution in light of his

indigent status.[3]

---

[3]  By statute, if the victim's losses are not ascertainable prior to sentencing, the court "shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing."  18 U.S.C. § 3664(d)(5).  Here, both parties filed unopposed motions for extensions of time to submit their respective briefs regarding restitution beyond the ninety-day statutory deadline for determining restitution.  Neither party objects to restitution being determined after the statutory deadline.  As the parties have acknowledged, the failure to determine the amount of restitution within ninety days after sentencing does not deprive the Court of jurisdiction to impose restitution.  <u>See</u> <u>Dolan v. United States</u>, 560 U.S. 605, 608 (2010); <u>United States v. Monzel</u>, 746 F. Supp. 2d 76, 82 (D.D.C. 2010).

## II.  LEGAL STANDARD

Federal courts may order restitution only when statutes authorize restitution.  See United States v. Papagno, 639 F.3d 1093, 1096 (D.C. Cir. 2011).  As relevant here, two statutes authorize restitution in criminal cases:  the Victim and Witness Protection Act, 18 U.S.C. § 3663 ("VWPA"), and the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A ("MVRA").

Congress enacted the VWPA in 1982, with subsequent amendments over the years.  The VWPA authorizes district courts, within their discretion, to order restitution to victims of certain criminal conduct.  See 18 U.S.C. § 3663(a)(1)(A) (providing that courts "may order" the defendant to make restitution to any victim of an offense or, if the victim is deceased, to the victim's estate).  In determining "whether" to order restitution, the VWPA requires courts to consider the following factors:  (1) "the amount of the loss sustained by each victim as a result of the offense"; (2) "the financial resources of the defendant, [and] the financial needs and earning ability of the defendant and the defendant's dependents"; and (3) "such other factors as the court deems appropriate."  See id. § 3663(a)(1)(B)(i).  The VWPA also provides that "[t]o the extent that the court determines that the complication and prolongation of the sentencing process resulting from the fashioning of an order of restitution under this section outweighs the need to provide restitution to any victims, the court may decline to make such an order."  Id. § 3663(a)(1)(B)(ii).

In 1996, Congress enacted the MVRA to make restitution mandatory in a broad range of cases involving crimes of violence and certain property crimes.  See United States v. Sizemore, 850 F.3d 821, 825-26 (6th Cir. 2017).  In particular, the MVRA requires defendants convicted of certain offenses to pay restitution to the victim, or to the victim's estate, for losses proximately caused by the defendant's criminal conduct.  The MVRA provides as follows:

> Notwithstanding any other provision of law, when sentencing a defendant convicted of an offense described in subsection (c), the court shall order, in addition to . . . any other penalty authorized by law, that the defendant make restitution to the victim of the offense or, if the victim is deceased, to the victim's estate.

18 U.S.C. § 3663A(a)(1). Subsection (c), in turn, provides that the MVRA applies only to certain offenses, including any offense that is a "crime of violence" under 18 U.S.C. § 16. See 18 U.S.C. § 3663A(c)(1)(A)(i).

Restitution orders under both the MVRA and VWPA are issued and enforced in accordance with 18 U.S.C. § 3664. See 18 U.S.C. § 3663A(d) (the MVRA); id. § 3663(d) (the VWPA). Pursuant to Section 3664(e), the United States bears the burden of proving by a preponderance of the evidence the amount of loss sustained by the victim. See 18 U.S.C. § 3664(e); United States v. Fair, 699 F.3d 508, 513 (D.C. Cir. 2012); United States v. Emor, 850 F. Supp. 2d 176, 201 (D.D.C. 2012). The burden of demonstrating the financial resources of the defendant and the financial needs of the defendant's dependents "shall be on the defendant." See 18 U.S.C. § 3664(e). In each order of restitution, "the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." Id. § 3664(f)(1)(A). After determining the amount of restitution owed, the court must specify the "manner in which, and the schedule according to which, the restitution is to be paid." Id. § 3664(f)(2).

## III. DISCUSSION

The instant motion turns on whether involuntary manslaughter under 18 U.S.C. § 1112(a) is a "crime of violence" under 18 U.S.C. § 16(a). If it is, then the MVRA applies and mandates restitution in the full amount of the victim's losses, which the Court previously determined to be $756,000. See United States v. Williams, 946 F. Supp. 2d at 114-15. If the

offense is not a crime of violence, then the VWPA applies and the decision to order restitution is left to the Court's discretion.

## A. The MVRA

The MVRA mandates restitution for any offense that constitutes a "crime of violence" under 18 U.S.C. § 16. See 18 U.S.C. § 3663A(c)(1)(A)(i). In its prior restitution opinion, the Court ordered restitution under the MVRA because second degree murder "undoubtedly is a crime of violence." See United States v. Williams, 946 F. Supp. 2d at 115. As noted, Mr. Williams' second degree murder conviction was reversed on appeal and the restitution order based on that conviction was vacated as a result. Mr. Williams subsequently pled guilty to involuntary manslaughter under 18 U.S.C. § 1112(a). According to the United States, the MVRA continues to apply in this case because involuntary manslaughter under Section 1112(a) is a crime of violence for purposes of Section 16(a). See Mot. at 5-11.[4]

Section 16(a) defines a "crime of violence" as "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 16(a). To determine whether a given offense qualifies as a crime of violence under Section 16(a), courts use a categorical approach and "look to the elements and the nature of the offense of conviction, rather than to the particular facts relating to [the defendant's] crime." See Leocal v. Ashcroft, 543 U.S. 1, 7 (2004); see also Johnson v. United States, 559 U.S. 133, 140 (2010) (applying the same standard to determine whether an offense is a "crime of violence" under Section 16(a) or a "violent felony" under 18 U.S.C. § 924(e)(2)(B), a provision

---

[4] In light of Sessions v. Dimaya, 138 S. Ct. 1204 (2018), the United States has withdrawn its argument that involuntary manslaughter is a crime of violence under 18 U.S.C. § 16(b). See Joint Status Report.

of the Armed Career Criminal Act); United States v. Haight, 892 F.3d 1271, 1279 (D.C. Cir.

2018) (applying categorical approach to hold that D.C. assault with a dangerous weapon is a

"violent felony" under 18 U.S.C. § 924(e)). In other words, as Judge (now Justice) Kavanaugh

put it in Haight:

> [W]e assess the crime categorically, 'in terms of how the law
> defines the offense and not in terms of how an individual offender
> might have committed it on a particular occasion.' If the law
> defines the crime in such a way that it can be committed using
> either violent or non-violent force, then the crime is not a violent
> felony under [the Armed Career Criminal Act], even if the
> defendant actually used violent force in committing the crime.

United States v. Haight, 892 F.3d at 1279 (internal citation omitted).[5]

Applying the categorical approach here, the question is whether involuntary

manslaughter necessarily involves "the use, attempted use, or threatened use of physical force

against the person or property of another." Involuntary manslaughter is defined in the relevant

statute as "the unlawful killing of a human being without malice" that is "[i]n the commission of

an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or

without due caution and circumspection, of a lawful act which might produce death." See 18

U.S.C. § 1112(a). In this case, the relevant elements of involuntary manslaughter, as stipulated

to and agreed upon by the parties in the Statement of Offense supporting the plea agreement, are

as follows: (1) Mr. Williams "unlawfully caused the death" of Sergeant Johnson; (2) Mr.

Williams "acted with wanton and reckless disregard" for Sergeant Johnson's life; and (3) Mr.

---

[5]    When interpreting a so-called "divisible" statute, courts apply a "modified
categorical approach" to determine which alternative crime the defendant committed. See
United States v. Redrick, 841 F.3d 478, 482 (D.C. Cir. 2016). To do so, courts look beyond the
statute "to a limited class of documents (for example, the indictment, jury instructions, or plea
agreement and colloquy) to determine what crime, with what elements, [the] defendant was
convicted of." Id. (citation omitted). The parties have not discussed the modified categorical
approach in their briefs nor asked the Court to apply it here.

Williams "knew or could have reasonably foreseen that his conduct was or could be a threat to the lives of others." See Statement of Offense.

To date, the D.C. Circuit has not decided whether involuntary manslaughter under Section 1112(a) is a crime of violence as defined by Section 16(a).  Mr. Williams argues that the offense is not a crime of violence because it can be committed without the use of "physical force."  See Opp'n at 8-9.  In Johnson v. United States, 559 U.S. 133 (2010), the Supreme Court interpreted the phrase "physical force" to mean "violent force – that is, force capable of causing physical pain or injury to another person."  Id. at 140 (emphasis in original).  The Court agrees with Mr. Williams that a defendant can be convicted of involuntary manslaughter under Section 1112(a) in the absence of the "violent force" required by United States v. Johnson.  As the Fifth Circuit has explained, passive conduct or omissions alone are sufficient to convict a defendant of involuntary manslaughter under Section 1112(a):

> [A]ny killing that occurs while the defendant is committing a non-felonious crime, or any act committed 'without due caution and circumspection' that results in a death may be charged as involuntary manslaughter.  To be sure, within this range of conduct is most drunk driving that causes death, but also a near-infinite number of other acts or omissions resulting in death:  grossly negligent captaining of a vessel, United States v. LaBrecque, 419 F. Supp. 430, 438 (D.N.J. 1976), driving on the wrong side of a highway, United States v. Pardee, 368 F.2d 368, 375 (4th Cir. 1966), neglect of duty by a railroad switch-tender, New Jersey v. O'Brien, 32 N.J.L. 169 (N.J. 1867), improper design of a building, New Jersey v. Ireland, 126 N.J.L. 444, 20 A.2d 69, 70 (1941), and overcrowding of a nightclub, Massachusetts v. Welansky, 316 Mass. 383, 55 N.E.2d 902, 912 (1944).

See United States v. Key, 599 F.3d 469, 479 (5th Cir. 2010).  Involuntary manslaughter under Section 1112(a) thus encompasses many situations that do not involve the use, attempted use, or threatened use of violent force against the person or property of another.  See United States v. LaBrecque, 419 F. Supp. 430, 438 (D.N.J. 1976) ("Certainly failures or omissions to act, so

characteristic of the law of negligence, fall within the ambit of [involuntary manslaughter under Section 1112(a)] which punishes criminal negligence.").

To be sure, involuntary manslaughter always results in death. But offenses resulting in death do not necessarily require the use of violent force – for instance, leaving an infant alone near a pool. See United States v. Torres-Miguel, 701 F.3d 165, 169 (4th Cir. 2012) ("Crimes of gross negligence or reckless endangerment, such as leaving an infant alone near a pool, involve a risk of injury without the use of force.") (citation omitted), abrogated on other grounds by United States v. Castleman, 572 U.S. 157 (2014). See also United States v. Middleton, 883 F.3d 485, 490-93 (4th Cir. 2018) (South Carolina involuntary manslaughter statute does not require the use of violent force and therefore is not a violent felony under 18 U.S.C. § 924(e)); Jobson v. Ashcroft, 326 F.3d 367, 373 (2d Cir. 2003) (listing examples of deaths that do not involve the use of violent force for purposes of New York involuntary manslaughter statute). Involuntary manslaughter under Section 1112(a) thus falls short of the definition in Section 16(a) because the offense does not necessarily involve the use, attempted use, or threatened use of violent force.

Because involuntary manslaughter under Section 1112(a) can be committed either with or without the use of "physical force" – that is, violent force – the offense is not categorically a crime of violence under Section 16(a). That determination alone renders the MVRA inapplicable to this case.[6]

_____

[6] Accordingly, the Court need not resolve whether involuntary manslaughter demands the requisite mens rea to be a crime of violence under Section 16(a) after the decisions of the Supreme Court and the D.C. Circuit in Voisine v. United States, 136 S. Ct. 2272 (2016), and United States v. Haight, 892 F.3d 1271 (D.C. Cir. 2018). Cf. United States v. Benally, 843 F.3d 350, 354 (9th Cir. 2016) (as amended) (noting that "[t]he government concedes that § 1112, which requires a mental state of only gross negligence, prohibits conduct that cannot be a 'crime of violence,' even after Voisine").

### B. The Victim and Witness Protection Act

Because the MVRA does not apply in this case, the decision to award restitution is left to the Court's discretion under the VWPA. The United States contends that the Court may and should award the full amount of Sergeant Johnson's future lost income to his estate under the VWPA. Mr. Williams responds that the VWPA does not authorize restitution for future lost income and that even if it did, the Court should decline to award restitution in light of Mr. Williams' indigent status. For the reasons that follow, the Court will exercise its discretion to award restitution under the VWPA, but leaves open the question of what amount of restitution to award pending a further submission from Mr. Williams.

### 1. Future Lost Income

The United States asks the Court to order restitution under the VWPA in the amount of $756,000 – the full amount of Sergeant Johnson's future lost income – based on the same evidence and expert analysis considered by the Court in its prior restitution opinion. See United States v. Williams, 946 F. Supp. 2d at 117-19. In "the case of an offense resulting in bodily injury to a victim," the VWPA permits courts to order restitution to "reimburse the victim for income lost by such victim as a result of such offense." See 18 U.S.C. § 3663(b)(2)(C). Based on that language, multiple courts have awarded restitution for future lost income under the VWPA. See United States v. Razo-Leora, 961 F.2d 1140, 1146 (5th Cir. 1992) (affirming restitution order requiring defendant to pay lost income to victim's widow under the VWPA); United States v. Jackson, 978 F.2d 903, 915 (5th Cir. 1992) (holding that the district court has the authority to award future lost income under the VWPA, but remanding for further factual findings regarding victim's losses); United States v. Ferranti, 928 F. Supp. 206, 223 (E.D.N.Y. 1996) (as amended) (awarding future lost income under the VWPA to fire department in arson

homicide case), <u>aff'd without discussion of restitution issue sub nom.</u>, <u>United States v. Tocco</u>, 135 F.3d 116 (2d Cir. 1998). <u>See also</u> <u>United States v. Atlantic States Cast Iron Pipe Co.</u>, 612 F. Supp. 2d 453, 484 (D.N.J. 2009) ("[C]ircuits have held that an award of lost income resulting from an offense causing bodily injury or death, including future lost income . . . may be included in a restitution award under the VWPA . . . .").

Mr. Williams responds that the VWPA does not permit restitution for future lost income. First, he contends that the VWPA's "complexity provision," Section 3663(a)(1)(B)(ii), prohibits an award of restitution based on future lost income. <u>See</u> Opp'n at 19. The complexity provision authorizes a sentencing court to decline restitution if it "determines that the complication and prolongation of the sentencing process resulting from the fashioning of an order of restitution . . . outweighs the need to provide restitution to any victims." <u>See</u> 18 U.S.C. § 3663(a)(1)(B)(ii). Mr. Williams relies primarily on <u>United States v. Fountain</u>, 768 F.2d 790 (7th Cir. 1985) (Posner, J.). There, the Seventh Circuit cited the complexity provision to hold that "an order requiring a calculation of lost future earnings unduly complicates the sentencing process and hence is not authorized by the [VWPA] – unless, to repeat a vital qualification, the amount is uncontested, so that no calculation is required." <u>See</u> <u>United States v. Fountain</u>, 768 F.2d at 802; <u>but</u> <u>see</u> <u>id</u>. at 807-08 (Swygert, J., concurring in part and dissenting in part). Based on <u>United States v. Fountain</u>, Mr. Williams argues that the VWPA's complexity provision prohibits courts from ordering restitution for future lost income. <u>See</u> Opp'n at 19-20.

The Court disagrees. In <u>United States v. Fountain</u>, the Seventh Circuit held only that the VWPA disfavors restitution based on future lost income when the calculation is unduly complex; it did not categorically bar restitution based on future lost income. The opinion makes that limitation clear: "[A] calculation of lost future earnings . . . is not authorized by the

[VWPA] – unless, to repeat a vital qualification, the amount is uncontested, so that no calculation is required." United States v. Fountain, 768 F.2d at 802; see United States v. Oslund, 453 F.3d 1048, 1063 (8th Cir. 2006); United States v. BP Prod. N. Am. Inc., 610 F. Supp. 2d 655, 694 (S.D. Tex. 2009) ("This court disagrees that applying Fountain results in a categorical bar to basing restitution or a fine on future losses resulting from an offense."). The calculation underlying the restitution order in this case has already been done. The Court calculated Sergeant Johnson's future lost income to be $756,000 in its prior restitution opinion. See United States v. Williams, 946 F. Supp. 2d at 117-19. And Mr. Williams does not challenge that calculation here. The VWPA's complexity provision therefore presents no obstacle to the award of future lost income in this case.

Second, Mr. Williams contends that the plain text of the VWPA does not authorize restitution for future lost income to deceased victims. See Opp'n at 23. In "the case of an offense resulting in bodily injury to a victim," the VWPA and the MVRA contain identical language authorizing courts to order restitution to "reimburse the victim for income lost by such victim as a result of such offense." See 18 U.S.C. § 3663(b)(2)(C) (the VWPA); id. § 3663A(b)(2)(C) (the MVRA). In its prior restitution opinion, the Court held that the MVRA authorizes courts to award future lost income to deceased victims. See United States v. Williams, 946 F. Supp. 2d at 116-17. While Mr. Williams concedes that the MVRA authorizes restitution for future lost income and that the relevant language of the two statutes is identical, he argues that the VWPA should be construed differently because it is remedial in nature, whereas the MVRA is punitive.

The Court is not persuaded by Mr. Williams' logic. The D.C. Circuit has expressly held that the MVRA is "essentially compensatory," not punitive. See United States v.

Fair, 699 F.3d at 512. Its purpose is to "restore a victim, to the extent money can do so, to the position [the victim] occupied before sustaining injury." See id. (citation omitted). The distinction Mr. Williams attempts to draw between the MVRA and the VWPA based on the alleged punitive nature of the MVRA therefore is wrong, and he fails to provide any basis for construing the identical language of these two statutes differently with respect to future lost income.[7]

Third, Mr. Williams invokes the rule of lenity. He contends that the VWPA is ambiguous as to whether it permits restitution for future lost income. See Opp'n at 22-24. Asserting that the word "reimburse" means to "pay back," Mr. Williams argues that future income is unearned and thus cannot be paid back. See id. at 23-24. He further argues that the VWPA does not distinguish between past and future income. See id. Based on these and other purported ambiguities, Mr. Williams contends that the rule of lenity favors declining to award future lost income in this case. But the rule of lenity applies only if, "after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute, such that the Court must simply guess as to what Congress intended." See United States v. Castleman, 572 U.S. at 172-73 (citation omitted). As discussed above, supra at 10-13, multiple courts have concluded that the statutory phrase "reimburse the victim for income lost" includes future lost income. The statute is not ambiguous in this regard and the rule of lenity therefore

---

[7]     In its prior restitution opinion, the Court held that "[t]o not award restitution for future lost income [if the victim dies] would lead to a perverse result where murderers would be liable for markedly less in restitution than criminals who merely assault and injure their victims." See United States v. Williams, 946 F. Supp. 2d at 116-17 (quoting United States v. Cienfuegos, 462 F.3d 1160, 1164 (9th Cir. 2006)). Mr. Williams interprets that passage to mean that the Court awarded future lost income because "murderers should pay markedly more in restitution" and thus implied that the MVRA is punitive. See Opp'n at 21. Not so. That passage stands for the proposition that restitution is available whether the victim dies or survives, not that awarding future lost income is punitive. See United States v. Williams, 946 F. Supp. 2d 112 at 115.

does not apply. See United States v. Serawop, 505 F.3d 1112, 1121-22 (10th Cir. 2007) (rule of lenity did not apply because identical language under the MVRA unambiguously authorizes courts to award future lost income); see also United States v. Messina, 806 F.3d 55, 69 (2d Cir. 2015); United States v. Oslund, 453 F.3d at 1063.

Accordingly, the Court concludes that the VWPA authorizes restitution for future lost income to deceased victims.

### 2. Mr. Williams' Ability to Pay

In determining "whether" to order restitution, the VWPA requires courts to consider the following factors:  (1) "the amount of the loss sustained by each victim as a result of the offense"; (2) "the financial resources of the defendant, [and] the financial needs and earning ability of the defendant and the defendant's dependents"; and (3) "such other factors as the court deems appropriate."  See 18 U.S.C. § 3663(a)(1)(B)(i).  The VWPA also provides that "[t]o the extent that the court determines that the complication and prolongation of the sentencing process resulting from the fashioning of an order of restitution under this section outweighs the need to provide restitution to any victims, the court may decline to make such an order."  Id. § 3663(a)(1)(B)(ii).

As to the amount of loss sustained by the victim, that figure already has been calculated in this case.  In its prior restitution opinion, the Court adopted the estimate of the United States' actuarial expert that Sergeant Johnson, had he lived, would have earned approximately $756,000 over the course of his lifetime.  See United States v. Williams, 943 F. Supp. 2d at 117-19.  The Court agrees with the United States that the underlying assumptions and factors used to calculate Sergeant Johnson's future lost income in the Court's prior restitution opinion remain unchanged.  And Mr. Williams does not challenge that calculation,

14

only the award of such a large amount.  Given that the amount of the victim's losses is

uncontested at this stage, the calculation of restitution is not unduly complex and does not weigh

against ordering restitution.  See 18 U.S.C. § 3663(a)(1)(B)(ii).

As to the defendant's financial needs and earning ability, Mr. Williams asks the

Court to exercise its discretion under the VWPA to either deny restitution altogether or to award

less than $756,000 (say, $15,000) because he "is indigent with little prospect of making

substantial money."  See Opp'n at 25.  The United States responds that the Court may not

consider Mr. Williams' economic circumstances when determining the amount of restitution to

award under the VWPA.  It argues that the VWPA permits the Court to consider a defendant's

financial needs and earning ability in deciding whether to order restitution, see 18 U.S.C.

§ 3663(a)(1)(B)(i)(II), but not in determining the amount of restitution.  It points to 18 U.S.C.

§ 3664(f)(1)(A), which provides that in each order of restitution – whether under the MVRA or

the VWPA – "the court shall order restitution to each victim in the full amount of each victim's

losses as determined by the court and without consideration of the economic circumstances of

the defendant."  See 18 U.S.C. § 3664(f)(1)(A) (emphasis added).

The D.C. Circuit has not directly addressed whether courts may consider the

defendant's economic circumstances, financial resources, and future earning ability when

determining the amount of restitution to award under the VWPA.  The United States therefore

asks the Court to follow the framework adopted by the Fourth, Sixth, and Seventh Circuits.  See

United States v. Diaz, 865 F.3d 168, 180-81 (4th Cir. 2017); United States v. Sizemore, 850 F.3d

821, 826-27 (6th Cir. 2017); United States v. Day, 418 F.3d 746, 755-57 (7th Cir. 2005); see also

United States v. Leahy, 438 F.3d 328, 337-38 (3d Cir. 2006).  As the Sixth Circuit put it in

Sizemore:  "Courts consider the financial circumstances of the defendant in deciding whether to

order restitution [under Section 3663(a)(1)(B)(i)(II) of the VWPA] and in setting the defendant's payment schedule, but not in setting the total amount of restitution due to the victims [under Section 3664(f)(1)(A)]." United States v. Sizemore, 850 F.3d at 827.

Those circuits rely in part on the 1996 amendments to Section 3663 (the VWPA) and Section 3664 (the enforcement procedures for restitution orders under both the VWPA and the MVRA). In 1996, Congress made three changes concerning the amount of restitution to be awarded. First, it deleted the following language from Section 3664(a):

> The court, in determining whether to order restitution under section 3663 of this title and the amount of such restitution, shall consider the amount of the loss sustained by any victim as a result of the offense, financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate.

18 U.S.C. § 3664(a) (1995) (emphasis added); see S. REP. NO. 104-179, at 5 (1995); see also United States v. Diaz, 865 F.3d at 180-81; United States v. Wolff, 195 F.3d 37, 40 n.3 (D.C. Cir. 1999). Second, Congress added the following language to Section 3663(a)(1)(B):

> The court, in determining whether to order restitution under this section, shall consider the amount of the loss sustained by each victim as a result of the offense, and may consider the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate.

See S. REP. NO. 104-179, at 4 (1995) (emphasis added). Third, it added a new subsection – Section 3664(f)(1)(A) – providing that "[i]n each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." See S. REP. NO. 104-179, at 6 (1995) (emphasis added). Congress made Section 3664(f)(1)(A) applicable both to the newly enacted MVRA and to the VWPA, while at the same time making clear that it

intended that orders of restitution entered pursuant to Section 3663 (the VWPA) remain discretionary.  See S. Rep. No. 104-179, at 19 (1995).[8]

Based on the 1996 amendments, the Fourth, Sixth, and Seventh Circuits have held that once the discretionary decision to award restitution is made, any award of restitution must be in the full amount of the victim's losses under the VWPA.  See, e.g., United States v. Day, 418 F.3d at 754.  Under this all-or-nothing approach of these circuits, sentencing courts must impose either full restitution in the amount of the victim's losses or no restitution at all.  They may not consider any possible adjustment based on the defendant's ability to pay.  This, of course, makes sense for the MVRA, which is a mandatory statute requiring full restitution for crimes of violence and certain property crimes, irrespective of the ability of the defendant to pay.

But unlike the MVRA, the VWPA is a statute intended to vest the sentencing court with discretion.  It includes a specific provision permitting courts to consider "the financial resources of the defendant, [and] the financial needs and earning ability of the defendant and the defendant's dependents" in determining whether to order restitution.  See 18 U.S.C. § 3663(a)(1)(B)(i)(II).  Yet under the interpretation of the VWPA and Section 3664 adopted by the Fourth, Sixth, and Seventh Circuits, once a court determines in its discretion that restitution to the victim is appropriate under the VWPA, it must award full restitution without regard to the

---

[8]     Mr. Williams relies on multiple cases decided prior to 1996 holding that courts have discretion to reduce the amount of restitution based on the defendant's financial circumstances.  See Williams Supp. at 4-5.  Those cases applied the VWPA before Section 3664(f)(1)(A) was added in 1996.  See, e.g., United States v. Newman, 6 F.3d 623 (9th Cir. 1993); United States v. McIlvain, 967 F.2d 1479 (10th Cir. 1992); United States v. Rogat, 924 F.2d 983 (10th Cir. 1991); United States v. Mahoney, 859 F.2d 47 (7th Cir. 1988).  See also United States v. Fuentes, 107 F.3d 1515, 1532-33 (11th Cir. 1997); United States v. Schott, 74 F.3d 107, 110 (6th Cir. 1996); United States v. White, 993 F.2d 147, 151 (7th Cir. 1993); United States v. Ryan, 874 F.3d 1052, 1055 (5th Cir. 1989).

defendant's financial resources and future earning ability.  But is the discretion vested in sentencing courts through the VWPA really so limited?

Mr. Williams points to the "tension" between the language of the VWPA – which gives the Court discretion in Section 3663(a)(1) – and the mandatory language of Section 3664. He maintains that the tension must be resolved in favor of the former in view of the overarching discretionary purpose of the VWPA.  See Williams Supp. at 3-7.  He argues that Section 3664 is a procedural mechanism which only establishes the procedures for structuring and enforcing restitution orders issued under the substantive provisions of the VWPA, and that where there is tension between the two, the substantive must prevail.  See id. at 3-6.[9]

As Judge Lynch put it for the Second Circuit, the procedural provisions of Section 3664 serve "not to impose any independent restitution obligations on a defendant but simply to set the procedures by which the sentencing court imposes [the] restitution order [already] calculated."  United States v. Thompson, 792 F.3d 273, 277-78 (2d. Cir. 2015) (internal quotation marks and citation omitted).  Section 3664 "cannot trump" the substantive restitution provisions found elsewhere in the statutes because Section 3664 is only a procedural mechanism. See United States v. Cliatt, 338 F.3d 1089, 1093 (9th Cir. 2003).  And where there is tension between the statute's substantive provision – here Section 3663(a)(1)(B)(i)(II), which permits the

_____

[9]        Among the other procedures set forth in Section 3664 are:  (1) a requirement that the defendant submit an affidavit "fully describing the financial resources of the defendant . . . [and] the financial needs and earning ability of the defendant and the defendant's dependents," 18 U.S.C. § 3664(d)(3); (2) a provision governing the resolution of disputes about "the proper amount . . . of restitution," id. § 3664(e); (3) a requirement that the court set a schedule for restitution payments based on the financial resources, obligations and projected earnings of the defendant, id. § 3664(f)(2)(A)-(C); and (4) a provision that the court may order "nominal periodic payments if the court finds" that the defendant's economic circumstances "do not allow the payment of the full amount of a restitution order in the foreseeable future under any reasonable schedule of payments, id. § 3664(f)(3)(B).

Court to consider the defendant's financial resources – and the procedural provision – Section 3664(f)(1)(A), which seems to preclude consideration of the defendant's economic circumstances – the procedural "cannot trump" the substantive.

The Court rejects the all-or-nothing approach of the Fourth, Sixth, and Seventh Circuits and concludes that the two provisions may be read together to permit courts to exercise the discretion Congress intended to give them under the VWPA.  Courts must be able to set or reduce the amount of restitution based on the defendant's present and future economic circumstances when determining both whether to order restitution and in setting the amount of restitution.  Otherwise there is little discretion left for courts to exercise and no relevant distinction between the mandatory MVRA, which Congress enacted in 1996, and the VWPA. Congress intended to vest courts with discretion when it enacted the VWPA in 1982, and that did not change in 1996.  See S. REP. NO. 104-179, at 19-20 (1995); cf. United States v. Serawop, 505 F.3d at 1118 ("Unlike the VWPA, the MVRA does not permit a court to consider a defendant's economic circumstances when it imposes restitution.") (citing 18 U.S.C. § 3664(f)(1)(A)); United States v. Leftwich, 628 F.3d 665, 668 (7th Cir. 2010).  This approach gives proper weight to the discretionary nature of the VWPA, as well as to Congress' express instruction under the VWPA to consider "the financial resources of the defendant, [and] the financial needs and earning ability of the defendant and the defendant's dependents" in determining whether to order restitution.  See 18 U.S.C. § 3663(a)(1)(B)(i)(II).  It is also sensible, considering the reality that "few victims are likely to benefit [from restitution] because more than 90% of criminal restitution is never collected."  See Lagos v. United States, 138 S. Ct. 1684, 1689 (2018).

3.  How Much Restitution to Award

The Court now turns to the amount of restitution to be awarded under the VWPA.

Mr. Williams suggests $15,000 based on his present financial circumstances.  He submitted a

fourteen-page form entitled "Declaration of Defendant of Offender Net Worth & Cash Flow

Statements" to support his position.  See Williams Supp. Ex. 1.  The form shows that Mr.

Williams has no present income aside from a $1,200 disability payment expected in the year

2020; $25 in the bank; an outstanding credit card balance of $260; and no assets other than a

twenty-year-old car.  See id.  Mr. Williams asserts that he must use his limited income and assets

to provide for his daughter.  See Opp'n at 26.  As to his future earning potential, Mr. Williams

contends that his criminal conviction is a significant impediment to employment, particularly in

light of the notoriety surrounding his offense.  See id. at 25-26 ("If any prospective employers

search his name on Google, the first articles they will find are 'Rico Williams sentenced to 22

years in 2005 slaying' and 'WREG Finds Soldier Living Double Life as Gang Member.'")

(footnotes omitted).

The burden of demonstrating the financial resources and earning ability of the

defendant and the financial resources, earning ability, and needs of the defendant's dependents

"shall be on the defendant."  See 18 U.S.C. § 3664(e).  And the defendant must so demonstrate

by a preponderance of the evidence.  See id.  The declaration submitted by Mr. Williams as to

his present state of indigency will not suffice.  See United States v. Ben Zvi, 242 F.3d 89, 100

(2d Cir. 2001) ("A defendant's limited financial resources at the time restitution is imposed is not

dispositive of whether restitution is proper . . . particularly where the defendant has a reasonable

potential for future earnings.").  To be sure, Mr. Williams is a forty-one-year-old convicted felon

who recently served eight years in prison.  He will undoubtedly face difficulty finding

employment due to his criminal conviction.  But at this stage, Mr. Williams has not met his

burden to demonstrate his earning ability and financial needs over his lifespan or the earning

ability and needs of his dependents through expert or other probative evidence.

Mr. Williams' education, vocational skills, and work history – as reflected in the

presentence investigation report prepared by the United States Probation Office prior to his

original sentencing in 2012 – indicate that he could earn sufficient income in the future such that

he can pay restitution in an amount greater than $15,000.  See United States v. Battista, 575 F.3d

226, 232 (2d Cir. 2009) (courts may consider the defendant's future earnings and potential future

earnings in ordering restitution); United States v. Ben Zvi, 242 F.3d at 100.  He graduated from

high school and enlisted in the United States Air Force, where he served for almost nine years.

See PSR ¶¶ 70-72.  He has expertise as a jet engine mechanic, is qualified to repair helicopters,

and possesses skills in electrical and hydraulic systems, as well as in turbine and diesel motors.

See id. ¶¶ 71-72.  It thus appears that Mr. Williams has some, perhaps significant, earning

potential.  See United States v. Sizemore, 850 F.3d at 827 (district court acted "within its

discretion in concluding that [the defendant's] education, training, and skillset will permit him to

secure gainful employment and make restitution payments as required").

Accordingly, the Court will permit Mr. Williams one final opportunity to submit

supplemental briefing regarding his financial resources, his future earning ability, and the

financial needs and earning ability of his dependents, along with probative evidence to support

his assertions.  An expert report would be helpful.

## IV.  CONCLUSION

For the reasons set forth in this Opinion, the motion [Dkt. No. 246] of the United States for restitution under the MVRA, or in the alternative, under the VWPA is granted in part. The Court will order Mr. Williams to pay restitution to Sergeant Johnson's estate pursuant to the VWPA.  As to the amount of restitution, Mr. Williams is directed to provide supplemental evidence of his financial resources, his future earning ability, and the financial needs and earning ability of his dependents.  A separate Order consistent with this Opinion shall issue this same day.

SO ORDERED.


_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  January 8, 2019