UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
UNITED STATES OF AMERICA            )
                                    )
    v.                              )   Criminal No. 09-0026 (PLF)
                                    )
RICO RODRIGUS WILLIAMS,             )
                                    )
        Defendant.                  )
_____ )

MEMORANDUM OPINION

The defendant, Rico Williams, a former member of the United States Air Force, killed Army Sergeant Juwan Johnson during a gang initiation that took place on July 3, 2005, near the Ramstein Air Force Base in Germany. See United States v. Williams, 946 F. Supp. 2d 112, 114 (D.D.C. 2013). On November 15, 2010, after a twelve-day jury trial, Mr. Williams was convicted of one count of second degree murder, in violation of 18 U.S.C. § 1111(a), and one count of witness tampering, in violation of 18 U.S.C. § 1512(b)(3). See id. The Court sentenced Mr. Williams in April 2012 to twenty-two years in prison on his second degree murder conviction and ten years in prison on his witness tampering conviction, the two sentences to run concurrently. See id. at 113. The Court also imposed five years of supervised release, with conditions, following the period of incarceration. See id.

At sentencing, the Court informed the parties that restitution would be ordered but deferred determination of the amount of restitution until the parties had an opportunity to file supplemental briefs. See United States v. Williams, 946 F. Supp. 2d at 113. Following the

submission of supplemental briefs in May 2013, the Court ordered Mr. Williams to pay restitution in the amount of $756,000 to Sergeant Johnson's estate. See id. at 114-15.

In February 2016, the D.C. Circuit reversed Mr. Williams' conviction for second degree murder, affirmed the conviction for witness tampering, and remanded for a new trial. See United States v. Williams, 836 F.3d 1, 19 (D.C. Cir. 2016). This Court subsequently vacated the second degree murder conviction and the restitution order based on that conviction. See May 3, 2017 Order Vacating Conviction, Sentence, and Restitution Order [Dkt. No. 231]. On June 15, 2017, Mr. Williams pled guilty to a superseding information charging him with one count of involuntary manslaughter under 18 U.S.C. § 1112(a). See Plea Agreement [Dkt. No. 237]. That same day, the Court sentenced Mr. Williams to eight years in prison for involuntary manslaughter and eight years in prison for witness tampering, those sentences to run concurrently, followed by three years of supervised release. See Amended Judgment of June 16, 2017 [Dkt. No. 241] at 3.[1] The Court deferred determination of the amount of restitution pending further briefing from the parties. See id. at 8.

In October 2017, the United States filed a motion for restitution [Dkt. No. 246]. It asked the Court to order restitution under the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A, in the amount of $756,000 – the full amount of Sergeant Johnson's future lost income – based on the same evidence and expert analysis considered by the Court in its prior restitution opinion. See Motion for Restitution at 14; see also Amended Judgment of June 16, 2017 [Dkt. No. 246] at 15; United States v. Williams, 946 F. Supp. 2d at 117-19. In the alternative, the United States argued that the Court has discretion to award the same amount of restitution under the Victim and Witness Protection Act ("VWPA"), 18 U.S.C. § 3663. See

---

[1] The Court entered a further Amended Judgment on December 27, 2018 [Dkt. No. 261] at the joint request of the parties.

2

Motion for Restitution at 12-13.  Mr. Williams responded that the MVRA does not apply in this case because it does not cover involuntary manslaughter.  See Supplemental Memorandum in Opposition to Government's Motion for Restitution [Dkt. No. 258].  As to the VWPA, Mr. Williams argued that the VWPA does not authorize restitution based on future lost income and that, even if it did, the Court should decline to award restitution in an amount greater than $15,000 in light of his indigent status.  See id.

On January 8, 2019, the Court issued an opinion in which it concluded that involuntary manslaughter under 18 U.S.C. § 1112(a) is not categorically a crime of violence under 18 U.S.C. §16(a) because involuntary manslaughter can be committed either with or without the use of physical force.  See United States v. Williams, 353 F. Supp. 3d 14, 20-21 (D.D.C. 2019).  For that reason, the Court found that the MVRA does not apply to this case, and because the MVRA does not apply, the Court has discretion under the VWPA to decide whether to award restitution.  See id. at 21.  Most importantly, the Court concluded that because the VWPA – unlike the MVRA – gives the Court discretion to decide whether to impose restitution, it also necessarily gives the Court discretion to determine in what amount to order restitution.  See id. at 26-27.  The Court rejected the "all-or-nothing" approach of the Fourth, Sixth, and Seventh Circuits, stating:  "Courts must be able to set or reduce the amount of restitution based on the defendant's present and future economic circumstances when determining both whether to order restitution and in setting the amount of restitution.  Otherwise, there is little discretion left for courts to exercise and no relevant distinction between the MVRA . . . and the VWPA."  See id. at 26.

The Court also concluded that the VWPA authorizes restitution for the future lost income of deceased victims to their survivors.  See United States v. Williams, 353 F. Supp. 3d at

3

21-23. And it found – based on the same evidence and expert analysis considered by the Court in its earlier restitution opinion in this matter, see United States v. Williams, 946 F. Supp. 2d at 117-19 – that the United States had adequately demonstrated that the amount of Sergeant Johnson's future lost income over the course of his lifetime was approximately $756,000. See United States v. Williams, 353 F. Supp. 3d at 24.

Having decided that it would order restitution, the Court turned to the remaining question: how much restitution to award Sergeant Johnson's survivors. As stated, Mr. Williams suggested that $15,000 was an appropriate amount given his indigency, but there was little factual support for that proposal. See United States v. Williams, 353 F. Supp. 3d at 27-28. The Court noted in its opinion that the burden of demonstrating the financial resources and earning ability of a defendant and the financial resources, earning ability, and needs of the defendant's dependents is, by statute, on the defendant, and the defendant must make that showing by a preponderance of the evidence. See 18 U.S.C. § 3664(e); see also United States v. Williams, 353 F. Supp. 3d at 27. Because the declaration submitted by Mr. Williams was insufficient to meet that burden, the Court offered Mr. Williams "one final opportunity" to submit supplemental briefing and expert evidence regarding his financial resources, his future earnings ability, and the financial needs and earnings ability of his dependents. See United States v. Williams, 353 F. Supp. 3d at 28.

On May 8, 2019, the defendant submitted a supplemental motion regarding restitution [Dkt. No. 269], accompanied by the expert report of Dr. Shireen Meer, an economist and Associate Director in the Washington office of the Berkeley Research Group, an international economic consulting firm. See Expert Report of Dr. Shireen Meer ("Dr. Meer Report") [Dkt. No. 269-1]. On June 26, 2019, the United States filed a notice [Dkt. No. 270],

informing the Court that it had no response to the defendant's expert report other than to rely on its earlier arguments and assertions, along with the testimony and expert report previously submitted.

The Court has thoroughly reviewed the expert report of Dr. Meer, who clearly is eminently qualified on the basis of education, training, and experience to opine in this matter. The Court also finds Dr. Meer's methodology reliable. As for the bases for Dr. Meer's opinions, the Court generally finds them reasonable. It does, however, question whether all relevant information was taken into account in paragraphs 14 and 15 of the expert report. There, Dr. Meer reports that because of certain nerve damage to Mr. Williams' hands – without specifying the extent of the damage – he can no longer use his technical skills and years of experience as a mechanic and thus has enrolled in barber school. See Dr. Meer Report at ¶14. Dr. Meer goes on to assume that Mr. Williams, now 41 years old, will be employed as a full-time barber for approximately twenty-three years. See id. ¶13. That assumption notwithstanding, Dr. Meer then finds that Mr. Williams may not be able to find full-time employment as a barber because of his felony conviction and because race "plays a non-trivial effect in further decreasing employment opportunities for formerly incarcerated persons of the African American race." See id. ¶15. Dr. Meer also discounts the estimate of future earnings from barbering to account for Mr. Williams' disability, see Dr. Meer Report at ¶16, and notes that Mr. Williams pays child support for his fifteen-year-old daughter of $2880 annually, which will continue until 2022, when Mr. Williams' daughter will turn eighteen. Id. ¶18. At the same time, Dr. Meer reasonably added the amount Mr. Williams receives in disability income and – looking forward twenty-plus years – Social Security income. See id. ¶17. Dr. Meer then presents two alternative scenarios: In the first, she applies a 20 percent discount rate to the value of Mr. Williams' future

potential earnings, less personal consumption; in the second, she applies an 11.5 percent discount rate. See id. ¶21. In the first scenario, she finds that the net present value of Mr. Williams' future earnings (less personal consumption) to range from ($17,760) to $22,379. See id. ¶22. In the second scenario, she calculates a range to be between ($8,686) and $56,304. See id. ¶23.

The Court itself previously recognized that Mr. Williams will "undoubtedly face difficulty finding employment due to his criminal conviction." United States v. Williams, 353 F. Supp. 3d at 27. It also noted, however, that his education, vocational skills, and work history "indicate that he could earn sufficient income in the future such that he can pay restitution in an amount greater than $15,000. . . . He graduated from high school and enlisted in the United States Air Force, where he served for almost nine years." See id. at 27-28. The Court also noted his expertise as a jet engine mechanic and the fact that he was then qualified to repair helicopters and possesses skills in electrical and hydraulic systems, as well as in turbine and diesel motors. See id. at 28. Thus, the Court concluded that Mr. Williams "[had] some, perhaps significant, earning potential." See id. While the Court was unaware of the nerve damage to his hands – and is still unaware of the severity of that damage – the Court is not convinced that all of those years of Mr. Williams' experience as a mechanic and his knowledge of electrical and hydraulic systems and turbine and diesel motors necessarily must go for naught and that his only option is to become a barber, as Dr. Meer contends. See Dr. Meer Report ¶14.

In light of all of the facts and evidence before it, and in view of the discretion this Court has already concluded it has under the Victim and Witness Protection Act, the Court concludes that Mr. Williams clearly does not have the ability to pay anything close to the $756,000 the government requests. Nor is it convinced that Mr. Williams' only employment option is to work as a barber. Nevertheless, in view of Dr. Meer's expert report and the other

information before it, the Court finds that a fair and reasonable amount of restitution should be calculated by beginning with the high end of Dr. Meer's second scenario – $56,304 – and then ratcheting it up slightly to take account of the expertise Mr. Williams gained while serving in the United States Air Force and the strong possibility that he will at some point find employment other than barbering. Accordingly, the Court will order restitution to Sergeant Johnson's estate in the total amount of $100,000 to be paid at a rate of $250 per month.

      A separate order consistent with this Memorandum Opinion will be issued this same day.

      SO ORDERED.

_____
PAUL L. FRIEDMAN
United States District Judge

DATE: November 4, 2019